**RECEIVED**
9/24/2021 AK
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Kenneth Wright, professionally known
as "Romance",

    Plaintiff,

v.

DJ International Records/Pop Star Publishing,
London Records/FFRR, Bolloré SE, Vivendi
SE, The Seagram Company Ltd., Warner Bros.,
Harmless Records, Polydor Japan, Virgin EMI,
Demon Music, Peermusic, SoundExchange,
Spotify, BMI and Universal Music Group, and
JOHN DOES 1-10,

    Defendants.

Case No.

1:21-cv-5085
Judge Franklin U. Valderrama
Magistrate Judge Sheila M. Finnegan

## COMPLAINT

Plaintiff, Kenneth Wright ("Plaintiff"), by his undersigned attorneys, hereby submit his Complaint against defendants DJ International Records/Pop Star Publishing, London Records/FFRR, Bolloré SE, Vivendi SE, The Seagram Company Ltd., Warner Bros., Harmless Records, Polydor Japan, Virgin EMI, Demon Music, Peermusic, SoundExchange, Spotify, BMI and Universal Music Group (collectively, "Defendants"), and allege as follows:

## PRELIMINARY STATEMENT

1. Mr. Kenneth Anthony Wright (whose pseudonym is ROMANCE) wrote, composed, arranged, produced, and performed, the distinctive 'sound recording' song titled "All Dis Music". He is also the only holder of an October 14th, 1986 © Copyright on this song. The defunct Chicago record company 'DJ International'™ (now listed as a subsidiary of Universal Music Group) before its longtime owners 'Alexander Alcarese' aka 'Rocky Jones' and Accountant Lauren Alcarese ceased doing business in 2019, illegally conveyed authority over

2. the sale, manufacture and distribution of a 'test pressing' for 'All Dis Music' without sharing any knowledge of this to Mr. Kenneth Anthony Wright.

2. This action seeks to vindicate Plaintiffs' rights in various musical compositions and sound recordings that Mr. Kenneth Anthony Wright created in the 1980s.

3. Mr. Wright is left with no choice but to file this lawsuit to seek: 1) his master recordings; 2) 'compensatory damages' in the official amount owed and 3) 'punitive damages' for close to thirty-five (35) years of lost opportunities through deception.

4. This legal filing involves much more than a claim for royalties. It involves the misappropriation of stolen pre-tax income from the publishing rights of the above-named song with definite violations of non-reporting of royalties to the federal government. When a forensics examination of deposited royalty and publishing income is reviewed for Mr. And Ms. Alcarese and their numerous business entities, it will reveal a concerted attempt to conceal violations of the United States Tax Code. The IRS has "never" accused Mr. Wright of not reporting income from publishing rights to his song, that could only mean one thing: someone else has been depositing the 50% split of publishing income from the song "All Dis Music" from the date of its inception [1987 to 2021]. Not to mention the ongoing income from copyright royalties. That is defined by some as 'Tax fraud'.

5. Beyond an artist's cultural impact his legacy, in addition, has concrete financial value. This may be obvious to those in the music business but under closer inspection that very value is often subverted by means of theft & graft. Kenneth Anthony Wright's story is one such example of unfair gain by a corporate network of parent companies and subsidiaries, oceans apart on different continents. A parent company can no more dismiss the actions of its subsidiaries than a mother can dismiss crimes committed by her underage offspring. 'Romance' pka Kenneth Anthony Wright's music story begins in Chicago, Illinois and traveled across the Atlantic Ocean to the international city of London, England. From there it migrated to mainland Europe, Asia, Australia, and parts unknown (precise information which is, in fact at present unavailable to me without extensive forensic accounting).

6. To calculate the compensatory damages owed to Mr. Wright for his song this would require an expansive financial forensics exercise which Mr. Wright intends to trigger through his cooperation with U.S. Federal authorities. There is initial recorded correspondence (which is

critical evidence) from the British transnational conglomerate known as EMI. This evidence from that corporation established the fact that Mr. Alexander Alcarese, and Accountant (Lauren Alcarese) through their company DJ International Records/Pop Star Publishing, accepted royalty payments, unbeknownst to Mr. Wright, of proceeds acquired from the profits derived from the song *"All Dis Music"*. As Mr. Wright should have received these monies from Mr. And Ms. Alcarese starting in 1987 onward, also the taxes owed should have been paid. Since Mr. Wright had no knowledge of these monies at the time, either those taxes were never paid, or intentionally 'fraudulent' documents exist connected to these payments from EMI to and Mr. And Ms. Alcarese. This being through his official financial records, business entity and personal tax filings; business entity and personal bank deposits. This is a serious matter, and it can no longer be delayed or relegated to a simple royalty issue.

7. Defendants' deceptive acts or practices have proximately caused Plaintiffs' actual damages in an amount to be determined at trial but believed to be greater than $975,000,000 (Nine-Hundred, Seventy-Five Million Dollars).

8. In addition to his actual damages, Plaintiff is entitled under the statute to reasonable Legal fees and costs.

## PARTIES

9. Plaintiff, Kenneth Wright, professionally known as "Romance" ("Wright"), is a resident of the State of California.

10. Defendant DJ International ("DJ International"), is a corporation created under the laws of the State of Illinois, having a principal place of business in the city of Chicago.

11. Defendant Pop Star Publishing ("Pop Star"), is a corporation created under the laws of the State of Illinois, having a principal place of business in the city of Chicago.

12. Defendant London Records/FFRR, is a corporation created under the laws of the United Kingdom, having a principal place of business in the city of London.

13. Defendant Bolloré SE is a corporation created under the laws of the Territory of Europe, a principal place of business in the country of France.

14. Defendant Vivendi SE is a corporation created under the laws of the Territory of Europe, a principal place of business in the country of France.

15. Defendant The Seagram Company Ltd. is a corporation created under the laws of the Territory of Canada, a principal metropolis of the province of Quebec, place of business in the city of Montreal.

16. Defendant Warner Bros., is a corporation created under the laws of the State of Illinois, having a principal place of business in the city of Chicago.

17. Defendant Virgin EMI is a corporation created under the laws of the Territory of United Kingdom, having a principal place of business in the city of London.

18. Defendant SoundExchange is a corporation created under the laws of the State of District Columbia, having a principal place of business in the city of Washington.

19. Defendant BMI is a corporation created under the laws of the State of Nashville, having a principal place of business in the city of Tennessee.

20. Defendant Universal Music Group is a corporation created under the laws of the State of California, having a principal place of business in the city of Santa Monica.

21. Defendant Harmless Records is a corporation created under the laws of the Territory of the United Kingdom, having a principal place of business in the city of Warford.

22. Defendant Demon Music is a corporation created under the laws of the Territory of the United Kingdom, having a principal place of business in the city of London.

23. Defendant Peermusic is a corporation created under the laws of the Territory of the United Kingdom, having a principal place of business in the city of London.

24. Defendant Polydor Ltd. Is a corporation created under the laws of the Territory of the United Kingdom, having a principal place of business in the country of London and under the laws of the Territory of East Asia, having a principal place of business in the city of Japan.

25. Plaintiff is informed and believe, and based thereon allege, that Defendant DJ International ("DJ International") is an entity of unknown legal origins, having a principal place of business in the City of Chicago, and at all relevant times was owned and operated by 'Alexander Alcarese' and 'Lauren Alcarese' both of whom are presumed living at the time of this complaint.

///

## JURISDICTION AND VENUE

26. This is an action for copyright infringement arising under the Copyright Act of 1976, as amended, Title 17, United States Code, §§ 101 et seq. (the "Copyright Act"), and pendant claims pursuant to the laws of the State of Illinois.

27. Court has original subject-matter jurisdiction over the Copyright Act claims pursuant to 28 U.S.C. § 1331. To the extent this Complaint contains claims for relief under Illinois law, those claims are specifically authorized to be brought in this Court under the provisions of 28 U.S.C. §§ 1338(a) and 1338(b).

28. This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. The citizenship of Plaintiff is fully diverse from that of Defendants, and the amount in controversy exceeds $75,000, exclusive of interest.

29. This Court has personal jurisdiction over Defendants because they are domiciled in the State of Illinois and incorporated under the laws of the State of Illinois.

30. This Court has further personal jurisdiction over Defendants because they, and each of them, conduct business continuously and systematically in Illinois for the purpose of engaging in, inter alia, the manufacture and distribution of sound recordings and the licensing of musical compositions created and/or owned by Mr. Wright, as well as related activities within the State of Illinois.

31. Defendants are further subject to personal jurisdiction based on their acts of placing their products into the stream of commerce with the expectation that such products will be delivered to and viewed by consumers within the State of Illinois and within this District.

32. Venue is proper in this Judicial District because a substantial part of the events or omissions giving rise to the claim occurred Venue is also proper in this Judicial District pursuant to 28 U.S.C. § 1400(a).

## ALLEGATIONS COMMON TO ALL COUNTS

### Background

33. 'All Dis Music' was originally released on the compilation 'House Sound of Chicago, Volume 3, Acid Tracks' in 1987 on FFRR/London Records and as a "12" single with House Music legend Francis Nicholls pka Frankie Knuckles 'Only The Strong Survive' in 1988 & 1992.

34. This record was manufactured, marketed, and distributed under the FFRR™ label over in the United Kingdom and became a hit classic Dance music anthem, first in England then spreading all through Europe and parts abound. The fact that this single was never released in North America, for the DJ International™ label it was produced under speaks to the secretive and clandestine nature of said label's owner regarding this song. Among the violations of Mr. Wright's legal rights are: "breach of contract", "fraud" and "unjust enrichment".

35. Mr. Wright seeks 'all' equitable remedies available for relief. In addition to the monetary damages of Nine Hundred and Seventy-Five Million Dollars ($975,000,000). Mr. Wright is requesting that all 'Master Recordings' of his song be relinquished and placed into his possession per his previous written request in 2019. "Adequate just relief" in this case requires more than a mere transfer of money.

36. To satisfy the injury against Mr. Wright, the court should go above and beyond compensatory damages. A dollar amount for compensatory damages was derived in part through documented segments of an online digital revenue readout, plus the "compounding interest" on all ongoing revenue that should have been deposited in a secured account for (34) years. Full calculations will only happen ultimately when all evidence from discovery is presented to the court to come to an honest, equitable approximation. As for punitive damages the court can examine all the evidence and reach a just sum through the judge's discretion supported by existing precedent.

37. Mr. Wright's efforts to address DJ International's blatant and pervasive spread of his music without any regard to his ownership in copyright (equity stake in publishing, sales, licensing, and broadcasting revenues) and any other 'undiscovered exploitation' have been unsuccessful.

38. When the song *"All Dis Music"* was taken overseas in 1987 by DJ International, Mr. Wright had only done what is known as a 'test pressing' but had departed from Chicago with a verbal understanding that Mr. Alexander Alcarese and Accountant Lauren Alcarese (the label owners of DJ International) would contact him through phone or written correspondence on the "formal progress" of his song.

39. Although Mr. and Ms. Alcarese took unsanctioned measures to release the unfinished piece of music to market, along with songs by other artists, who unlike Mr. Wright, knew their completed tracks would be officially released, Mr. and Ms. Alcarese never volunteered these

important facts to Mr. Wright. The success of the compilation vinyl album "The House Sound of Chicago: Volume lll Acid Tracks" led to a sampler promo in 1988 of a 12inch single with *"All Dis Music"* as a B-side of *"Only the Strong Survive"* by the legendary House Music artist Frankie Knuckles (né Francis Nicholls).

## COUNT I
## (DECLARATORY JUDGMENT – FRAUD ON COPYRIGHT OFFICE – RECORDINGS)
### (Against All Defendants)

40. Plaintiff, repeat and reallege the allegations in Paragraphs 1 through 39, as if fully set forth herein.

41. Mr. Wright is now and at all relevant times has been the owner of the copyrights in the Recording *"All Dis Music"*.

>    **WHEREFORE**, Plaintiff, respectfully prays that the Court find in his favor and enter an order and judgment as follows: issuing a Declaratory Judgment finding that ALL DEFENDANTS committed Fraud on the Copyright Office with their applications for Copyright Registrations for the sound recording "*All Dis Music",* invalidating the existing Copyright Registrations for those sound recording held in Defendants' names, and entering such further relief that this Court deems just and appropriate as well as Plaintiffs' costs, including reasonable legal fees as provided by statute, and interest on its damages at the legal rate.

## COUNT II
## (WILLFUL DIRECT COPYRIGHT INFRINGEMENT OF THE COMPOSITIONS)
### (Against All Defendants)

42. Plaintiff, repeat and reallege the allegations in Paragraphs 1 through 41, as if fully set forth herein.

43. Mr. Wright is an author and owner of the copyrights in and to the Compositions entitled "*All Dis Music"* (the "Infringed Compositions") for which copyright registrations were issued to them in 1986 bearing Registration Nos.: SRu000100565 /1986-10-14 (the "Wright PA Registrations").

Plaintiff's Complaint against Defendant's DJ International, et al.

7

44. As the owner of the copyrights in the Infringed Compositions, Mr. Wright has the exclusive rights under the Copyright Act, among other things, to produce, manufacture, transmit and/or distribute Phonorecords embodying them.

45. Defendant's conduct, either directly and/or through third parties, constitutes an infringement of Plaintiffs' musical composition copyrights for "*All Dis Music*".

46. Plaintiff duly satisfied the statutory requirements regarding registration and deposit of the Infringed Copyrights upon which the alleged infringements are based pursuant to 17 U.S.C. §§ 407 and 411 as well as other statutory formalities required under the Copyright Act.

47. At various times during the three-year period prior to the commencement of this action, Defendants, individually and/or collectively, have copied and mechanically reproduced the Infringed Compositions in full, and distributed, sold, and/or licensed both physical and digital copies of the Infringed Compositions, all without authorization or consent of Mr. Wright.

48. Defendants, individually and/or collectively, were without any license or other form of permission, whether expressed or implied, to copy, reproduce, duplicate, perform, record, sell, use, transmit or distribute the Infringed Compositions.

49. By reproducing, manufacturing, distributing, transmitting, and selling copies of the Infringed Compositions without any license or other form or permission, the Defendants have infringed Plaintiffs' rights in violation of the Copyright Act.

50. The Defendants, individually and/or collectively acts were in knowing and reckless disregard of Plaintiffs' rights in and to the Infringed Compositions, and such infringements were willful as that term is defined in the Copyright Act.

51. As a direct result of the Defendants, individually and/or collectively' infringement of the Infringed Compositions, Plaintiff is entitled to their actual damages with respect to each of the Infringed Compositions, including the Defendants' profits from such infringements, as will be proven at trial.

52. Digital Music News illustrated the issue addressed in this lawsuit with a recent posting on their website that:

> *The underlying lawsuit between Atlanta, Georgia-headquartered Cox Communications and the RIAA initiated in late July of 2018, when the major labels formally alleged that Cox had reaped substantial profits from "massive copyright infringement committed by thousands of its subscribers."*
> *A jury in late December of 2019 agreed with the plaintiffs, finding Cox Communications guilty of both vicarious and contributory infringement on some 10,017 works – and attaching a $99,830.29*

*fee to each of the alleged violations, bringing the grand damages total to just over $1 billion. (The amount was rounded down to $1 billion even on the "total damages" line.) Then, in early June of 2019, U.S. District Judge Liam O'Grady dismissed the majority of Cox's challenges against the stunning verdict, but indicated that the disclosed total of 10,017 allegedly infringed works may have been "premature."*

53. Alternatively, Plaintiff is entitled to the maximum to statutory penalties under 17 U.S.C. § 504, in the amount of $150,000 with respect to each timely registered work that was infringed, to disgorgement of Defendants' profits, and to all other relief the Court deems just and proper under the law.

54. Plaintiff is also entitled to the costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

55. Defendants, individually and/or collectively conduct has caused, and unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot be compensated or measured in money. Plaintiff has no adequate remedy at law.

56. Pursuant to 17 U.S.C. §502, Plaintiff is entitled to a permanent injunction prohibiting further infringement of the Infringed Compositions.

**WHEREFORE**, Plaintiff, respectfully prays that the Court find in his favor and enter an order and judgment as follows: finding ALL DEFENDANTS liable for direct infringement of Plaintiffs' musical composition copyrights in *All Dis Music* and (i) awarding actual damages pursuant to 17 U.S.C. §504(b), including Defendants' profits, in such amounts as may be found; or (ii) in the alternative and at Plaintiffs' election relating to the infringements of *All Dis Music*, statutory damages pursuant to 17 U.S.C. § 504(c) in the maximum amount allowed by law, (iii) awarding Plaintiff the costs of this action, including reasonable attorney's fees, pursuant to 17 U.S.C. §505 relating to the infringements of *All Dis Music*, and (iv) entering such further relief that this Court deems just and appropriate, as well as Plaintiffs' costs, including reasonable attorney's fees as provided by statute, and interest on its damages at the legal rate.

## COUNT III
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (Against ALL Defendants)

57. Plaintiff, repeat and reallege the allegations in Paragraphs 1 through 56, as if fully set forth herein.

Plaintiff's Complaint against Defendant's DJ International, et al.

9

58. At various times during the three-year period prior to the commencement of this action, the Infringed Compositions have been and continue to be illegally reproduced, published, licensed and/or sold and distributed without Plaintiffs' authorization in violation of 17 U.S.C. § 101 et seq.

59. Plaintiff, own the copyrights in the Infringed Compositions which have been infringed by the Defendants as hereinabove alleged.

60. Defendants, individually and/or collectively are secondarily liable under the Copyright Act for such infringing acts, including for the direct infringement of Plaintiffs' exclusive rights by Defendants.

61. Defendants, individually and/or collectively induced, caused, participated in, aided and abetted and/or materially contributed to the infringing conduct by Defendants.

62. Defendants, individually and/or collectively are liable as a contributory copyright infringer. The Defendants had actual and constructive knowledge of the infringing activity that occurred and is occurring with respect to the Infringed Compositions, and induced, caused, participated in, aided and abetted and/or materially contributed to such infringing conduct by Defendants.

63. The foregoing acts of infringement by Defendants' individually and/or collectively have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiffs' rights.

64. As a direct and proximate result of such infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiff, or either of them, are entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each of the Infringed Compositions or such other amounts as may be proper.

65. Alternatively, at Plaintiffs' election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to actual damages with respect to each of the Infringed Compositions, including Defendants' profits from such infringements, in such amounts as will be proven at trial.

66. Defendant's conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated for or measured in money. Plaintiff has no adequate remedy at law.

  **WHEREFORE**, Plaintiff respectfully prays that the Court find in his favor and enter an order and judgment as follows: finding ALL DEFENDANTS liable for contributory infringement of Plaintiffs' musical composition copyrights in *All Dis Music*,

and (i) awarding actual damages pursuant to 17 U.S.C. §504(b), including any profits of Defendants, individually and/or collectively, in such amounts as may be found; or (ii) in the alternative and at Plaintiffs' election relating to the infringements of *All Dis Music*, awarding statutory damages pursuant to 17 U.S.C. § 504(c) in the maximum amount allowed by law; (iii) relating to the infringements of *All Dis Music*, awarding Plaintiff the costs of this action, including reasonable attorney's fees, pursuant to 17 U.S.C. §505; and (iv) entering such further relief that this Court deems just and appropriate, as well as Plaintiffs' costs, including reasonable attorney's fees as provided by statute, and interest on its damages at the legal rate.

## COUNT IV
## (BREACH OF CONTRACT)
## (By Wright Against ALL Defendants)

67. Plaintiff, repeat and reallege the allegations in Paragraphs 1 through 66, as if fully set forth herein.

68. Since in or about 1986, Defendants, individually and/or collectively and/or its successors in-interest and/or persons or entities acting through them or under their authority (including without limitation Defendants, individually and/or collectively) have continued to exploit the Compositions and Recordings entitled "*All Dis Music*" (hereinafter the "Wright Works"), as to which Defendants was issued purported mechanical licenses, including without limitation, through the worldwide sale, license and/or distribution of those works in both physical formats as well as through digital service providers such as Spotify, iTunes, Band Camp, Soundcloud and YouTube.

69. Defendants, individually and/or collectively have failed and refused to pay and account to Mr. Wright for their exploitation of the Wright Works despite the contractual obligations to do so.

70. As a result, Wright has been damaged in an amount to be determined at trial but believed to be greater than $975,000,000.

**WHEREFORE**, Plaintiff respectfully prays that the Court find in his favor and enter an order and judgment as follows: awarding Wright compensatory damages against DEFENDANTS, INDIVIDUALLY AND/OR COLLECTIVELY for the material breach

of contract in an amount to be proved at trial, but not less than $1,000,000, and entering such further relief this Court deems just and appropriate, as well as Plaintiffs' costs, including reasonable legal fees as provided by statute, and interest on its damages at the legal rate.

## COUNT V
## (BREACH OF THE WARRANTY OF GOOD FAITH AND FAIR DEALING)
### (Against ALL Defendants)

71. Plaintiff, repeat and reallege the allegations in Paragraphs 1 through 70, as if fully set forth herein.

72. Defendants, individually and/or collectively have continued to exploit the Wright Works including, through the worldwide sale, license and/or distribution of those works in both physical formats as well as through digital service providers such as Spotify, iTunes, Band Camp, Soundcloud and YouTube

73. Defendants, individually and/or collectively have failed and refused to pay or account for the exploitation of the Wright Works despite the contractual obligations to do so.

74. Defendants, individually and/or collectively have received substantial income from the exploitation of the Wright Works and have failed and refused to pay Mr. Wright his rightful share of that income.

75. Defendants, individually and/or collectively have exercised any contractual rights they, or either of them, may have with respect to the Wright Works, arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties.

76. As a result, thereof, the Defendants breached the implied warranty of good faith and fair dealing that adheres to every contract as a matter of law.

77. As a result, thereof, Mr. Wright has been damaged in an amount to be determined at trial but believed no less than $1,000,000.

   **WHEREFORE**, Plaintiff respectfully prays that the Court find in his favor and enter an order and judgment as follows: awarding Mr. Wright compensatory damages against ALL DEFENDANTS for the breach of the implied warranty of good faith and fair dealing in an amount to be proved at trial, but not less than $975,000,000, entering such further relief that this Court deems just and appropriate.

## COUNT VI
## (UNJUST ENRICHMENT)
## (Against All Defendants)

78. Plaintiff, repeat and reallege the allegations in Paragraphs 1 through 77, as if fully set forth herein.

79. Defendants, individually and/or collectively have continued to exploit the Wright Works including, through the worldwide sale, license and/or distribution of those works in both physical formats as well as through digital service providers such as Spotify, iTunes, Band Camp, Soundcloud and YouTube.

80. Defendants, individually and/or collectively have received substantial income from the exploitation of the Wright Works and have failed and refused to pay Plaintiff their rightful share of that income.

81. Defendants, individually and/or collectively have received money which belongs to Plaintiff under circumstances whereby in equity and good conscience they ought not keep it.

82. As a result, thereof, the Defendants have been unjustly enriched by its receipt and retainer of money otherwise belonging to Plaintiff in an amount to be determined at trial but believed to be in excess of $975,000,000.

**WHEREFORE**, Plaintiff respectfully prays that the Court find in his favor and enter an order and judgment as follows: awarding Plaintiff damages against ALL DEFENDANTS for unjust enrichment in an amount to be proved at trial, but not less than $975,000,000, and entering such further relief that this Court deems just and appropriate.

## COUNT VII
## (CONSTRUCTIVE TRUST)
## (By Wright Against All Defendants)

83. Plaintiff, repeat and reallege allegations in Paragraphs 1 through 82, as fully set forth herein.

84. Defendants, individually and/or collectively have received substantial income from the exploitation of the Wright Works and have failed and refused to pay Mr. Wright his rightful share of that income.

85. Defendants, individually and/or collectively have received money which belongs to Mr. Wright under circumstances whereby in equity and good conscience they ought not keep it.

86. As a result, Defendants hold money otherwise belonging to Mr. Wright in constructive trust in an amount to be determined at trial but believed to be greater than $975,000,000.

**WHEREFORE**, Plaintiff respectfully prays that the Court find in his favor and enter an order and judgment as follows: against ALL DEFENDANTS, imposing a constructive trust in an amount to be proved at trial, but not less than $975,000,000, and entering such further relief that this Court deems just and appropriate.

## COUNT VIII
## (VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT)
### (By Plaintiff Against All Defendants)

87. Plaintiff, repeat and reallege the allegations in Paragraphs 1 through 86 as if fully set forth herein.

88. Defendants, individually and/or collectively have committed egregious and deceptive acts or practices, including, but not limited to, selling and distributing to the public from their offices in Chicago, Illinois, physical recordings and digital distribution (through streaming services or otherwise) of the Recordings under the representation that they owned and controlled such works.

89. Such acts or practices were knowingly false, deceptive, and misleading.

90. Defendants, individually and/or collectively intended that the public rely on these deceptions in the purchasing of those physical records and/or licensing of such works via music streaming services.

91. Defendants, individually and/or collectively deceptive acts or practices occurred in a course of conduct involving trade or commerce, specifically the wrongful commercial exploitation of the Records.

92. Defendants, individually and/or collectively deceptive acts or practices have proximately caused Plaintiffs' actual damages in an amount to be determined at trial but believed to be greater than $975,000,000.

93. In addition to his actual damages, Plaintiff is entitled under the statute to reasonable legal fees and costs.

**WHEREFORE**, Plaintiff respectfully prays that the Court find in his favor and enter an order and judgment as follows: against **ALL DEFENDANTS** a judgment that the Defendants' conduct violates the Illinois Consumer Fraud Act and imposing damages in an amount to be proved at trial, but not less than $975,000,000, and entering such further relief as this Court deems just and appropriate, as well as Plaintiffs' costs, including reasonable legal fees as provided by statute, and interest on its damages at the legal rate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demand a trial by jury of all issues which are so triable.

Dated: September 24, 2021

By: /s/Kenneth Wright, Pro Se
P.O. Box 20174
Long Beach, CA 90802
Tel: (562) 285-2421
Kennethw524@gmail.com