**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

KENNETH WRIGHT,               )
                                    )
      Plaintiff,           )
                                      )     Case No.: 1:21-cv-5085
v.                             )
                                      )     Judge Franklin U. Valderrama
DJ INTERNATIONAL RECORDS/POP    )
STAR PUBLISHING, LONDON         )     Magistrate Judge Sheila M.
RECORDS/FFRR, BOLLORÉ SE,        )     Finnegan
VIVENDI SE, THE SEAGRAM         )
COMPANY LTD., WARNER BROS.,    )
HARMLESS RECORDS, POLYDOR     )
JAPAN, VIRGIN EMI, DEMON MUSIC,  )
PEERMUSIC, SOUNDEXCHANGE,    )
SPOTIFY, BMI AND UNIVERSAL     )
MUSIC GROUP, AND JOHN DOES 1-10, )
                                      )
      Defendants.      )
_____)

**DEFENDANT SOUNDEXCHANGE, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      PRELIMINARY STATEMENT ................................................................................1

II.     BACKGROUND ....................................................................................................2

      A.      Plaintiff Enters Music Recording and Publishing Agreements. ..............................2

III.    LEGAL STANDARD.............................................................................................5

IV.   ARGUMENT .........................................................................................................6

      A.      THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF
CAN BE GRANTED. ................................................................................6

            1.      Plaintiff's State Law Claims Fail Because Plaintiff Has Not
Alleged Any Wrongful Conduct by SoundExchange. ................................6

            2.      Plaintiff's Copyright Claims Fail Because Plaintiff Cannot
Establish Ownership of a Valid Copyright. ..................................9

      B.      THE COMPLAINT IS BARRED BY THE APPLICABLE STATUTES OF
LIMITATION. ...................................................................................11

V.      CONCLUSION....................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrosius v. Chi. Ath. Clubs, LLC*,
No. 1-20-0893, 2021 Ill. App. LEXIS 554 (Ill. App. 1st Sept. 30, 2021) ................................9

*Armstrong v. Guigler*,
673 N.E.2d 290 (Ill. 1996) ..........................................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................5

*Bell v. Chi. Cubs Baseball Club, LLC*,
No. 19-cv-2386, 2020 U.S. Dist. LEXIS 17527 (N.D. Ill. Feb. 4, 2020) ........................2, 5, 9

*Blue Book Servs. v. Farm Journal, Inc.*,
435 F. Supp. 3d 912 (N.D. Ill. 2020) ............................................................................3

*Brinley Holdings, Inc. v. Husch Blackwell LLP*,
No. 19-cv-05242, 2022 U.S. Dist. LEXIS 3462 (N.D. Ill. Jan. 7, 2022) ................................7

*Estate of Brown v. ARC Music Grp., Inc.*,
830 F. Supp. 2d 501 (N.D. Ill. 2011), *aff'd*, 523 F. App'x 407 (7th Cir. 2013) ............8, 12, 14

*Chi. Title Land Tr. Co. v. Potash Corp. of Sask. Sales Ltd.*,
No. 1-12-3550, 2013 Ill. App. Unpub. LEXIS 1662 (Ill. App. 1st Jul. 31,
2013) ........................................................................................................................13

*Consumer Health Info. Corp. v. Amylin Pharm., Inc.*,
819 F.3d 992 (7th Cir. 2016) ........................................................................................15

*Direct Energy Bus., LLC v. City of Harvey*,
No. 1-20-0629, 2021 Ill. App. LEXIS 247 (Ill. App. 1st May 18, 2021) ................................6

*Energy Intelligence Grp. v. Exelon Generation Co.*,
No. 20-cv-3983, 2021 U.S. Dist. LEXIS 76688 (N.D. Ill. Apr. 21, 2021) ............................14

*Gardner v. Cole*,
2013 Ill. App. Unpub. LEXIS 2389 (Ill. App. 4th Oct. 24, 2013) ............................................8

*Hassebrock v. Ceja Corp.*,
29 N.E.3d 412 (Ill. App. 5th 2015) ..............................................................................12

*Hatcher v. Hatcher*,
   158 N.E.3d 326 (Ill. App. 3d 2020) ...................................................................7

*Held v. Held*,
   137 F.3d 998 (7th Cir. 1998) ..........................................................................13

*Hoover v. Country Mut. Ins. Co.*,
   975 N.E.2d 638 (Ill. App. 3d 2012) ...............................................................12

*Kaiser v. Fleming*,
   735 N.E.2d 144 (Ill. App. 2d 2000) .................................................................8

*Martin Cartage & Express, Inc. v. Arthur J. Gallagher & Co.*,
   No. 2-11-1271, 2012 Ill. App. Unpub. LEXIS 1671 (Ill. App. 2d Jul. 10, 2012)...................13

*Mosier v. Vill. of Holiday Hills*,
   128 N.E.3d 1210 (Ill. App. 2d 2019) ..............................................................14

*Rhombus Asset Mgmt. v. Pawlan Law, LLC*,
   No. 1-12-2350, 2014 Ill. App. Unpub. LEXIS 2716 (Ill. App. 1st Dec. 3,
   2014) ...............................................................................................................6

*Robinson v. Toyota Motor Credit Corp.*,
   775 N.E.2d 951 (Ill. 2002) ...............................................................................9

*Rush Univ. Med. Ctr. v. Draeger, Inc.*,
   No. 17 C 6043, 2017 U.S. Dist. LEXIS 189588 (N.D. Ill. Nov. 16, 2017) ...........................13

*Saletech, LLC v. E. Balt, Inc.*,
   20 N.E.3d 796 (Ill. App. 1st 2014) ...................................................................7

*Scholz Design, Inc. v. Jaffe*,
   488 F. Supp. 2d 749 (N.D. Ill. 2007) ..............................................................11

*Stavrinides v. Vin De Bona*,
   No. 2:18-cv-00314-CAS(JPRx), 2018 U.S. Dist. LEXIS 41305 (C.D. Cal.
   Mar. 12, 2018)................................................................................................11

*Sundance Homes v. Cty. of Du Page*,
   746 N.E.2d 254 (Ill. 2001) .............................................................................13

*Travelers Cas. & Sur. Co. v. Bowman*,
   893 N.E.2d 583 (Ill. 2008) .............................................................................13

*W. Consol. Premium Props. v. Mc Risk Servs. LLC*,
   No. 12 C 3481, 2012 U.S. Dist. LEXIS 203163 (N.D. Ill. Sep. 11, 2012) .............................6

*Warrick v. Roberts*,
  34 F. Supp. 3d 913 (N.D. Ill. 2014) ...............................................9, 10, 11

**Statutes and Other Authorities**

17 U.S.C. § 106...............................................................................................11

17 U.S.C. § 112.................................................................................................1

17 U.S.C. § 114............................................................................................1, 11

17 U.S.C. § 507(b)..........................................................................................14

37 C.F.R. § 380.4............................................................................................11

37 C.F.R. § 380.4(a)(1).....................................................................................8

735 ILCS 5/13-205..........................................................................................13

735 ILCS 5/13-206..........................................................................................12

815 ILCS 505/10a(e).......................................................................................14

Fed. R. Civ. P. Rule 12(d)................................................................................2

Fed. R. Civ. P. Rule 12(b)(6)......................................................................5, 10

Defendant SoundExchange, Inc. ("SoundExchange") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Complaint of Plaintiff Kenneth Wright ("Plaintiff").

## I. PRELIMINARY STATEMENT

Pro se plaintiff Kenneth Wright asserts claims against fifteen defendants, including moving defendant SoundExchange, Inc., relating to a recording entitled "All Dis Muzic", which he purportedly made more than thirty-five years ago. Plaintiff's eight claims can be divided roughly into two groups, copyright infringement (Counts I-III) and state law claims sounding in breach of contract and related claims for equitable relief (Counts IV-VIII).

Defendant SoundExchange is a nonprofit collective rights management organization, which has been designated by the United States Congress to collect and distribute digital performance royalties for sound recordings. SoundExchange pays featured and non-featured artists and sound recording rights owners for non-interactive use of sound recordings under the statutory licenses set forth in 17 U.S.C. §§ 112 and 114. In order to avail oneself of SoundExchange's services, artists and owners must register with SoundExchange.

Plaintiff has not alleged registration with SoundExchange. In fact, other than identifying SoundExchange as a defendant (Cmplt. at ¶ 18), Plaintiff has not asserted any claims against, or allegations concerning, SoundExchange in any manner. Even given a certain leeway to pro se plaintiffs, such laxity cannot be permitted to allow Plaintiff to haul innocent parties into court without any basis or allegation of wrongdoing. To the extent that Plaintiff has any claims, they would be limited to contractual claims against defendants D.J. International Records ("DJ") and Pop Star Music Publishing ("Pop Star"), and even then, those claims would be subject to the Illinois statute of limitations of ten years.

1

All of Plaintiff's claims are based upon the false premise that Plaintiff is the owner of the copyrights in this recording and that the defendants, in one capacity or another, have exploited the recording without his consent.  In truth, as alluded to by Plaintiff himself, Plaintiff entered into agreements with defendants DJ and Pop Star, assigning all rights to those defendants.  The existence of these agreements prove fatal to Plaintiff's claims seeking damages for copyright infringement.  Moreover, the false premise that none of the defendants had any rights to this recording infuses Plaintiff's remaining claims, rendering them similarly untenable.  As such, all of Plaintiff's claims against SoundExchange should be dismissed with prejudice.

## II.  **BACKGROUND**[1]

### A.  **Plaintiff Enters Music Recording and Publishing Agreements.**

Plaintiff Kenneth Wright purports to own the copyrights in "the distinctive 'sound recording' song" titled "All Dis Muzic," created in the 1980s.  (Cmplt. at ¶ 1.)  On or about October 6, 1986, Plaintiff and defendant DJ entered into an exclusive Contract for Recording Artists (the "Recording Agreement," Declaration of Laura K. McNally, dated January 28, 2022 ("McNally Decl."), Ex. 1), pursuant to which DJ "employ[ed]" Plaintiff "to render personal services for [DJ] or in [its] behalf for the purpose of recording and making phonograph records."  (Ex. 1 at ¶ 1.)  Under the Recording Agreement, Plaintiff expressly agreed that "[a]ll recordings hereunder and

---

[1] The facts below are taken primarily from Plaintiff's Complaint ("Cmplt.", Dkt. 1) and two agreements central to its allegations, and implicitly referenced therein.  (*See, e.g.,* Cmplt. at ¶ 34 ("The fact that this single was never released in North America, for the DJ International label it was produced under...."); *id.* at ¶ 38 ("When the song "*All Dis Music*" was taken overseas in 1987 by DJ International, Mr. Wright had only done what is known as a 'test pressing' but had departed from Chicago with a verbal understanding that...(the label owners of DJ International) would contact him....").)  The Court may therefore consider those agreements in deciding the instant motion.  *See Bell v. Chi. Cubs Baseball Club, LLC*, No. 19-cv-2386, 2020 U.S. Dist. LEXIS 17527, at *8 (N.D. Ill. Feb. 4, 2020).  In the event the Court nevertheless determines that it may not consider the documents submitted with this motion to dismiss, the Court may convert this motion to a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d).

all records and production made therefrom, together with sound recording copyrights therein and the performances embodied therein, shall be entirely [DJ's] property, free of any claims whatsoever by [Plaintiff] or any person deriving any rights or interests from [Plaintiff]." (*Id.* at ¶ 8.) For the avoidance of doubt, the Recording Agreement further provided that all of Plaintiff's performances are "made for hire" within the scope of his employment, and that DJ is "to be considered the author for the purpose of copyrights in sound recordings and . . . own[s] all of the rights comprised in such copyrights." (*Id.*) In addition, Plaintiff granted DJ and its licensees "the right to make records or other reproductions of the performances embodied in [Plaintiff's] recordings by any method now or hereafter known, and to sell and deal in the same . . . ." (*Id.*)[2]

Plaintiff signed the Recording Agreement, which lists his full name, address, phone numbers, and (redacted) social security number at the top of the first page, and initialed each page of the Recording Agreement. (*See generally id.*) On or about October 14, 1986, eight days *after* entering into the Recording Agreement and assigning DJ all of the rights in his musical recordings, Plaintiff filed for a copyright registration for "1 sound cassette + lyrics" entitled, "All Dis Muzic," which was ultimately issued by the U.S. Copyright Office as Registration No. SRu000100565. (Cmplt. at ¶ 1; Ex. 3.) The copyright registration for "All Dis Muzic," of which the Court may take judicial notice, lists Plaintiff as the Author of the work. *See Blue Book Servs. v. Farm Journal, Inc.*, 435 F. Supp. 3d 912, 916 (N.D. Ill. 2020).

On or about February 4, 1987, Plaintiff and defendant Pop Star entered into an Exclusive Songwriter's Agreement (the "Publishing Agreement," and together with the Recording Agreement, the "Agreements," McNally Decl., Ex. 2), pursuant to which Pop Star "employ[ed]"

---

[2] In exchange for these rights and assignments, DJ agreed to pay Plaintiff certain advances and royalties on the sales of Plaintiff's recordings. (*See id.* at ¶¶ 3-6.)

Plaintiff "to render his services as a songwriter and composer . . . ." (Ex. 2 at ¶ 1.) Under the Publishing Agreement, Plaintiff expressly agreed to:

> "irrevocably and absolutely assign[], transfer[], set[] over and grant[] to [Pop Star], its successors and assigns . . . all rights and interests of every kind, nature and description in and to the results and proceeds of [Plaintiff's] services hereunder . . . which musical works *have been* written, composed, created, or conceived, in whole or in part, by [Plaintiff] . . . and which may hereafter during the term hereof, be written, composed, created or conceived by [Plaintiff] . . . and which *are now owned* or controlled and which may, during the term hereof, be owned or controlled, directly or indirectly, by [Plaintiff] . . . including the title, words and music of each composition, and all world-wide copyrights and renewals and extensions thereof . . . .

(*Id.* at ¶ 3) (emphasis added.) Plaintiff further agreed and represented that all such rights, including copyrights, "are and shall at all times be [Pop Star's] sole and exclusive property as the sole owner thereof[.]" (*Id.*) In addition, the Publishing Agreement provided that the grant of rights thereunder specifically included exploitation of Plaintiff's compositions by, among other things, public performance, the sale of sheet music, and synchronization with "master records, transcriptions, sound tracks, pressings, and any other mechanical, electrical or other reproductions of said compositions...." (*Id.* at ¶ 3(a)-(f).)[3] Like the Recording Agreement, Plaintiff signed the Publishing Agreement and initialed each page of the Publishing Agreement. (*See generally id.*)

Plaintiff filed this lawsuit on September 24, 2021, asserting eight causes of action against fifteen different music industry defendants and seeking more than $975 million in damages and equitable relief. (*See generally* Cmplt.) Plaintiff alleges that DJ "illegally conveyed authority over the sale, manufacture and distribution of a 'test pressing' for 'All Dis Music' without sharing any knowledge of this" with Plaintiff, and engaged in the "blatant and pervasive spread of his music without any regard to his ownership in copyright." (*Id.* at ¶¶ 1, 37.) Plaintiff further alleges that

---

[3] In exchange for these rights and assignments, Pop Star agreed to pay Plaintiff certain advances and royalties on the exploitation of Plaintiff's compositions. (*See id.* at ¶¶ 7-8.)

DJ and Pop Star "accepted royalty payments, unbeknownst to Mr. Wright, of proceeds acquired from the profits derived from the song … ." (*Id.* at ¶ 6.) Plaintiff's Complaint contains no specific allegations of wrongdoing (or indeed, mention of any conduct whatsoever) by SoundExchange or any of the defendants other than DJ and Pop Star.

Plaintiff purportedly became aware of the allegedly unlawful activity and began making "several inquiries…regarding this matter" to the defendants no later than January 27, 2014. (Plaintiff's Objection, Dkt. 15; *see* Cmplt. at ¶ 37.)

## III.  **LEGAL STANDARD**

"A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint," and to survive such a motion to dismiss, "a plaintiff's complaint must allege facts which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Bell v. Chi. Cubs Baseball Club, LLC*, No. 19-cv-2386, 2020 U.S. Dist. LEXIS 17527, at *7-8 (N.D. Ill. Feb. 4, 2020) (quoting *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In evaluating the legal sufficiency of a complaint, "it is proper for the Court to 'consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice.'" *Chi. Cubs Baseball Club*, 2020 U.S. Dist. LEXIS 17527, at *8.

## IV.  ARGUMENT

**A.**  **THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

**1.**  **Plaintiff's State Law Claims Fail Because Plaintiff Has Not Alleged Any Wrongful Conduct by SoundExchange.**

Plaintiff has not alleged sufficient facts to plausibly suggest or allow the court to draw the reasonable inference that defendant SoundExchange is liable under any of Plaintiff's state-law theories.

Plaintiff asserts causes of action for breach of contract and breach of warranty against all defendants (Counts IV-V), yet does not allege having ever entered into any agreement with SoundExchange.  The elements of a breach of contract claim are that "(1) there was a valid and enforceable contract between the parties, (2) the plaintiff performed the contract, (3) the defendant breached the contract, and (4) the plaintiff suffered damages as a result."  *Direct Energy Bus., LLC v. City of Harvey*, No. 1-20-0629, 2021 Ill. App. LEXIS 247, at *7 (Ill. App. 1st May 18, 2021). Plaintiff's failure as to the first essential element of the claim alone warrants dismissal.  *See Rhombus Asset Mgmt. v. Pawlan Law, LLC*, No. 1-12-2350, 2014 Ill. App. Unpub. LEXIS 2716, at *60 (Ill. App. 1st Dec. 3, 2014) (affirming dismissal where agreement in question "contradicts all allegations that defendant was hired by plaintiffs at all" and "refutes any purported allegation of a contract between defendant and plaintiffs"); *W. Consol. Premium Props. v. Mc Risk Servs. LLC.*, No. 12 C 3481, 2012 U.S. Dist. LEXIS 203163, at *9 (N.D. Ill. Sep. 11, 2012) (dismissing breach of contract claims against two defendants where the complaint contained "no allegations of any contract between plaintiffs and either" defendant).

Plaintiff's unjust enrichment claim (Count VI) fares no better.  "To state a cause of action upon a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that defendant's retention of the benefit violates

6

fundamental principles of justice, equity, and good conscience." *Hatcher v. Hatcher*, 158 N.E.3d 326, 330 (Ill. App. 3d 2020); *Saletech, LLC v. E. Balt, Inc.*, 20 N.E.3d 796, 808 (Ill. App. 1st 2014). "If an unjust enrichment claim rests on the same improper conduct alleged in another claim, the unjust enrichment claim 'will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.'" *Brinley Holdings, Inc. v. Husch Blackwell LLP*, No. 19-cv-05242, 2022 U.S. Dist. LEXIS 3462, at *17 (N.D. Ill. Jan. 7, 2022) (quoting *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)).

Here, the only conduct that Plaintiff mentions in the Complaint is the allegedly unauthorized exploitation of the sound recording for "All Dis Muzic." Plaintiff's unjust enrichment claim is therefore inextricably tied to his copyright infringement claims, yet, as explained further below, Plaintiff cannot establish his ownership of any rights in the song. Plaintiff granted and/or assigned the copyrights in "All Dis Muzic" to DJ and Pop Star pursuant to the Agreements. Without ownership of the copyrights, Plaintiff cannot plead that any of the defendants retained a benefit, *to his detriment*, from their exploitation. *See Saletech, LLC*, 20 N.E.3d at 808 ("In the absence of allegations that defendants obtained any benefit from Saletech's assistance in the investigation, the claim for unjust enrichment fails as a matter of law."); *see also Brinley Holdings*, 2022 U.S. Dist. LEXIS 3462, at *17-18 ("Unjust enrichment is not a mode of imposing punitive damages; it is a means of recovering something that the defendant is not entitled to but is unfairly possessing *to the plaintiff's detriment*.") (emphasis in original). Good conscience requires nothing from SoundExchange or the other defendants as far as Plaintiff is concerned, and, as a result, the cause of action for unjust enrichment should be dismissed.

Plaintiff's constructive trust cause of action (Count VII) also fails to state a claim against SoundExchange. Constructive trust is an equitable remedy imposed only "against one who, by

some form of wrongdoing such as actual or constructive fraud, breach of a fiduciary duty, duress, coercion or mistake, has been unjustly enriched." *Gardner v. Cole*, 2013 Ill. App. Unpub. LEXIS 2389, at *14 (Ill. App. 4th Oct. 24, 2013); *Kaiser v. Fleming*, 735 N.E.2d 144, 148 (Ill. App. 2d 2000); *see Estate of Brown v. ARC Music Grp., Inc.*, 830 F. Supp. 2d 501, 509 (N.D. Ill. 2011) ("The Estate's claim for a constructive trust fails for much the same reasons . . . it has not adequately pleaded either fraud or the existence of a fiduciary relationship."), *aff'd*, 523 F. App'x 407 (7th Cir. 2013).  The Seventh Circuit has further noted that "a breach of contract 'is not analogous to the wrongful activity that has been found to warrant the imposition of a constructive trust.'" *Estate of Brown*, 830 F. Supp. 2d at 509 (quoting *Amendola v. Bayer*, 907 F.2d 760, 763 (7th Cir. 1990)).

Plaintiff has alleged no wrongdoing by SoundExchange whatsoever, and nothing sounding in fraud or breach of fiduciary duty against any of the defendants.  Accordingly, this claim too is untenable.  *See Kaiser v. Fleming*, 735 N.E.2d at 148-49 (affirming dismissal of constructive trust claim because "the plaintiff failed to sufficiently allege a fiduciary relationship"); *Estate of Brown*, 830 F. Supp. 2d at 509 ("Where the Estate has made no specific allegations of wrongdoing against Music Sales other than a failure to pay royalties due under a contract, this [constructive trust] claim must be dismissed.").  Furthermore, as noted above, any artist seeking to receive royalties from SoundExchange must register with SoundExchange.  *See* 37 C.F.R. § 380.4(a)(1).  Plaintiff has not alleged his compliance with the regulatory requirements entitling him to any benefit from SoundExchange.

Finally, the absence of any allegation in the Complaint implicating conduct on the part of SoundExchange proves fatal to Plaintiff's claim for violation of the Illinois Consumer Fraud Act ("CFA") (Count VIII).  A plaintiff bringing such a claim "must state with particularity and

specificity the deceptive manner of defendant's acts or practices, and the failure to make such averments requires the dismissal of the complaint." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002); *see Ambrosius v. Chi. Ath. Clubs, LLC*, No. 1-20-0893, 2021 Ill. App. LEXIS 554, at *15 (Ill. App. 1st Sept. 30, 2021) ("A statutory consumer fraud claim must be pled with the same particularity and specificity as that required under common law fraud."). Plaintiff makes no such averments, requiring the dismissal of the Complaint.

### 2. Plaintiff's Copyright Claims Fail Because Plaintiff Cannot Establish Ownership of a Valid Copyright.

"To establish copyright infringement, a plaintiff must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Chi. Cubs Baseball Club*, 2020 U.S. Dist. LEXIS 17527, at *8 (quoting *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017)). "'[I]t is elementary that the lawful owner of a copyright is incapable of infringing a copyright interest that is owned by [it].'" *Warrick v. Roberts*, 34 F. Supp. 3d 913, 919 (N.D. Ill. 2014) (quoting *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984)).

Counts I-III of Plaintiff's Complaint, which all sound in copyright infringement, fail as a matter of law, because Plaintiff cannot establish the first element of any copyright infringement claim – his ownership of a valid copyright. As noted above, Plaintiff granted and/or assigned any and all rights in the sound recording and musical composition for "All Dis Muzic" (among others), including the copyrights, when he entered into the Recording Agreement and Publishing Agreement with Defendants DJ and Pop Star, respectively. (*See* Ex. 1 at ¶ 8; Ex. 2 at ¶ 3.) Any and all exploitation of "All Dis Muzic" by DJ and Pop Star, as well as by any of their successors, assignees, and licensees (including defendant SoundExchange and presumably other defendants), was authorized and done pursuant to DJ's and Pop Star's ownership of the underlying copyrights,

free from any adverse claim by Plaintiff. (*See* Ex. 1 at ¶ 8; Ex. 2 at ¶ 3.) Plaintiff cannot establish his ownership of a valid copyright in "All Dis Muzic," and accordingly the Complaint and all causes of action asserted therein should be dismissed with prejudice.

The essential facts here are similar to those in *Warrick v. Roberts*, where the court granted a Rule 12(b)(6) motion to dismiss copyright infringement and related state law claims. *See* 34 F. Supp. 3d at 914-15. The plaintiffs were a songwriting duo that created the gospel musical composition, "I'm So Grateful (Keep in Touch)," a recording of which was sampled in the 2012 song "3 Kings," distributed by UMG Recordings, Inc. ("Universal") and featuring performances by hip-hop artists Rick Ross, Dr. Dre and Jay-Z. *Id.* at 915. The plaintiff songwriters, apparently upset that elements of their gospel work were used as background music for "unsavory" rap lyrics, sued UMG, Rick Ross, Dr. Dre, Jay-Z, and the song's producer for copyright infringement. *Id.* at 915-16. Defendants claimed that Universal held the sole copyright in that work and had licensed their activities, identifying a 1974 Exclusive Songwriter's and Composer's Agreement between one of the plaintiffs and ABC/Dunhill Music, Inc., Universal's predecessor-in-interest. *Id.* at 916. The court quoted provisions from that 1974 agreement that are remarkably similar to the grant of rights contained in the Publishing Agreement. *Compare id.* at 916-17 (quoting sweeping release of all rights, including copyrights, worldwide), *with* Ex. 2 at ¶ 3 (same).

The court found "ultimately dispositive" the "inescapable" fact that one of the plaintiffs had transferred her rights to ABC Dunhill, Universal's predecessor, making Universal, at a minimum, a co-owner of the copyright in "Grateful." *Id.* at 914, 919. The court reasoned that the 1974 publishing agreement "could not be more clear: Shepherd was selling in its totality her interest in the musical works," and "any ordinary reader of the English language would be on notice that the rights granted to ABC/Dunhill were extremely broad." *Id.* at 921. "Because

Universal acted in accordance with the rights that Shepherd ceded to it in the 1974 Agreement," the court concluded, "it cannot be held liable for infringement . . . [and] neither Dr. Dre, Jay Z, Rick Ross nor any of the other defendants can be held liable for infringement, for they produced and performed 3 Kings in accordance with licenses validly given by Universal." *Id.* at 922; *see also Stavrinides v. Vin De Bona*, No. 2:18-cv-00314-CAS(JPRx), 2018 U.S. Dist. LEXIS 41305, at *9 (C.D. Cal. Mar. 12, 2018) (granting motion to dismiss copyright claim pursuant to agreement "irrevocably grant[ing]" the defendants the right "to freely use and exploit the [plaintiffs'] videos in any manner").

In the present case, the Agreements "could not be more clear" and it is likewise "elementary" that DJ and Pop Star could not infringe the copyright interests owned by them, nor could any of their successors, assignors, or licensees, including the rest of the defendants. *See Warrick*, 34 F. Supp. 3d at 919-21. Moreover, SoundExchange's role is defined and subscribed by Section 114 of the Copyright Act to simply collect and disburse royalties. *See* 17 U.S.C. § 114(f)-(g); 37 C.F.R. § 380.4. Thus, Plaintiff has not (and cannot) allege that SoundExchange acted or authorized anyone else to act in violation of the exclusive rights held by a copyright owner pursuant to Section 106 of the Copyright Act. *See* 17 U.S.C. § 106; *Scholz Design, Inc. v. Jaffe*, 488 F. Supp. 2d 749, 749 (N.D. Ill. 2007) ("In order to be held liable for direct infringement, the defendants would have had to violate at least one exclusive right granted to the copyright holder under 17 U.S.C. § 106 . . . The defendants did none of these things.") (internal citation omitted). Counts I-III of the Complaint must be dismissed.

## B.   THE COMPLAINT IS BARRED BY THE APPLICABLE STATUTES OF LIMITATION.

All of Plaintiff's claims should be dismissed for the additional reason that each is time-barred by the applicable statute of limitations. First, in Illinois, there is a ten-year statute of

limitation for breach of written contract claims. *See Armstrong v. Guigler*, 673 N.E.2d 290, 292-93 (Ill. 1996); 735 ILCS 5/13-206 ("[A]ctions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing . . . shall be commenced within 10 years next after the cause of action accrued[.]"). "An action for breach of contract accrues when the breach of the contractual duty or obligation occurs, and generally, the statute of limitations begins to elapse when facts exist which authorize the bringing of an action." *Hassebrock v. Ceja Corp.*, 29 N.E.3d 412, 422 (Ill. App. 5th 2015) (internal citations, alterations, and quotation marks omitted); *see Hoover v. Country Mut. Ins. Co.*, 975 N.E.2d 638, 649 (Ill. App. 3d 2012) ("[F]or contract actions and torts arising out of contractual relationships, the cause of action accrues at the time of the breach of the contract, not when a party sustains damages."); *Estate of Brown*, 830 F. Supp. 2d at 511.

The only contracts even implicitly referred to in the Complaint are the 1986 Recording Agreement and the 1987 Publishing Agreement. Plaintiff acknowledges and expressly alleges that any alleged breach triggering accrual occurred more than three decades ago. (*See* Cmplt. at ¶ 4 ("[T]hat could only mean one thing: someone else has been depositing the 50% split of publishing income from the song 'All Dis Music' from the date of its inception [1987 to 2021]."); *id.* at ¶ 68 ("Since in or about 1986, defendants, individually and/or collectively and/or its successors-in-interest and/or persons or entities acting through them or under their authority . . . have continued to exploit the Compositions and Recordings entitled '*All Dis Music*'....").) Any conceivable contract claim that Plaintiff could assert against DJ or Pop Star would have accrued when those defendants first failed to pay Plaintiff under the Agreements, and would have been rendered untimely under the ten-year statute of limitations sometime in the late 1990s—decades before Plaintiff filed the Complaint in 2021.

Accordingly, the statute of limitations bars Plaintiff's causes of action sounding in breach of contract (Counts IV-V), which fail as a matter of law. *See Travelers Cas. & Sur. Co. v. Bowman*, 893 N.E.2d 583, 593 (Ill. 2008) (holding that cause of action to enforce indemnity agreement was untimely if commenced more than ten years after defendants failed or refused to tender payment, and remanding for factual determination); *Chi. Title Land Tr. Co. v. Potash Corp. of Sask. Sales Ltd.*, No. 1-12-3550, 2013 Ill. App. Unpub. LEXIS 1662, at *8-9 (Ill. App. 1st Jul. 31, 2013) (holding that "the cause of action for breach of contract accrued when PCS Sales (Canada) cancelled the lease without paying the plaintiffs the cancellation fee," and affirming dismissal on statute of limitations grounds); *see also Martin Cartage & Express, Inc. v. Arthur J. Gallagher & Co.*, No. 2-11-1271, 2012 Ill. App. Unpub. LEXIS 1671, at *18 (Ill. App. 2d Jul. 10, 2012) ("Hoping a party will remedy a breach does not delay accrual of the breach of contract action.").

Second, the statute of limitations for both unjust enrichment and constructive trust claims under Illinois law is five years and begins to run once "the plaintiff knew, or reasonably should have known, that he has been injured and that his injury was wrongfully caused." *Rush Univ. Med. Ctr. v. Draeger, Inc.*, No. 17 C 6043, 2017 U.S. Dist. LEXIS 189588, at *5 (N.D. Ill. Nov. 16, 2017) (internal citation omitted); *see Sundance Homes v. Cty. of Du Page*, 746 N.E.2d 254, 263 (Ill. 2001) (noting that Illinois courts apply five-year statute of limitation to both claims); *Held v. Held*, 137 F.3d 998, 1002 (7th Cir. 1998) (applying five-year statute of limitations in 735 ILCS 5/13-205 to action for enforcement of a constructive trust). The discovery rule disposes of these causes of action in Plaintiff's Complaint (Counts VI-VII).

Plaintiff has represented to this Court that he began making "several inquiries…regarding this matter" to the defendants as early as January 27, 2014, reflecting Plaintiff's discovery and knowledge of the allegedly wrongful conduct underlying the Complaint by at least that date. (*See*

Plaintiff's Objection, Dkt. 15.)  Plaintiff filed this action on September 24, 2021, more than seven years later and more than four years after the statutes of limitation for unjust enrichment and constructive expired no later than January 27, 2017.  Therefore, these claims are untimely and should be dismissed.  *See Estate of Brown*, 830 F. Supp. 2d at 511 (dismissing unjust enrichment, constructive trust, and other claims as time-barred where allegedly wrongful assignment occurred several years before suit was filed).

Third, the Illinois Consumer Fraud Act imposes a three-year statute of limitations, likewise from the date "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused."  *Mosier v. Vill. of Holiday Hills*, 128 N.E.3d 1210, 1218 (Ill. App. 2d 2019).; *see* 815 ILCS 505/10a(e).  Plaintiff's statutory fraud claim (Count VIII) also expired no later than January 27, 2017, pursuant to Plaintiff's represented awareness of allegedly wrongful exploitation and missing payments by at least January 2014.  *See Mosier*, 128 N.E.3d at 1218 (affirming dismissal with prejudice where plaintiffs filed suit more than three years after learning of the alleged injury).

Fourth, the Copyright Act provides a three-year statute of limitations for civil copyright infringement claims.  *See* 17 U.S.C. § 507(b).  "The Seventh Circuit has adopted 'a discovery rule in copyright cases: [t]he copyright statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights.'"  *Energy Intelligence Grp. v. Exelon Generation Co.*, No. 20-cv-3983, 2021 U.S. Dist. LEXIS 76688, at *14 (N.D. Ill. Apr. 21, 2021) (quoting *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014)) (internal alteration and quotation marks omitted).  Although, "any infringing act within [a] three-year look-back period from the date of the complaint can form the basis of an infringement claim," the Seventh Circuit has explained that this rule only "applies to ordinary

infringement suits, not suits in which the central dispute is copyright *ownership*." *Consumer Health Info. Corp. v. Amylin Pharm., Inc.*, 819 F.3d 992, 996 (7th Cir. 2016) (emphasis in original). "[C]opyright claims premised on disputes about ownership accrue 'when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation.'" *Id.* (quoting *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013)) (internal quotation marks omitted).

Here, Plaintiffs copyright infringement claims (Counts I-III) are premised on a dispute of ownership and accrued upon the first express repudiation of his ownership in the copyright for "All Dis Muzic," which Plaintiff alleges occurred in or around 1987.[4] Accordingly, these causes of action expired decades before Plaintiff filed the Complaint and should be dismissed pursuant to the Copyright Act's three year statute of limitations. *See Consumer Health*, 819 F.3d 992 at 997.

## V.  CONCLUSION

For all of the above reasons, defendant SoundExchange, Inc. respectfully asks that the Court grant its motion to dismiss Plaintiff's Complaint with prejudice, and award such other relief that this Court deems just and proper.

---

[4] *See* Cmplt. at ¶ 38 ("When the song "*All Dis Music*" was taken overseas in 1987 by DJ International, Mr. Wright had only done what is known as a 'test pressing' but had departed from Chicago with a verbal understanding that . . . []the label owners of DJ International[] would contact him through phone or written correspondence on the "formal progress" of his song."); *id.* at ¶ 39 ("Although Mr. and Ms. Alcarese took unsanctioned measures to release the unfinished piece of music to market . . . [they] never volunteered these important facts to Mr. Wright.").

Dated: Chicago, Illinois
January 28, 2022

Respectfully submitted,

**LOEB & LOEB LLP**

By: /s/ *Laura K. McNally*
Laura K. McNally
321 North Clark Street, Suite 2300
Chicago, IL 60654
Telephone: (312) 464-3155
Email: lmcnally@loeb.com

*Attorneys for Defendant SoundExchange, Inc.*