## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KENNETH WRIGHT,

        Plaintiff,

      v.

DJ INTERNATIONAL RECORDS, *et al.*,

        Defendants.

No. 21-cv-5085
Judge Franklin U. Valderrama

### ORDER

Plaintiff Kenneth Wright (Wright) a music producer and recording artist, wrote, composed, and produced the song "All Dis Music." Wright, proceeding *pro se*, sued numerous music industry defendants for their alleged use of this recording without his consent and without payment of any royalties or compensation, asserting, among other claims, causes of action for copyright infringement, breach of contract, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/2. R. 36,[1] First Amended Complaint (FAC). Defendant SoundExchange, Inc. (SoundExchange) moves to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(6). R. 37, Mot. Dismiss. For the reasons that follow, the Court grants the motion to dismiss.

---

[1]Citations to the docket are indicated by "R." Followed by the docket number or filing name, and where necessary, a page or paragraph citation.

## Background[2]

Wright, whose pseudonym is ROMANCE, is a music producer and recording artist, who wrote, composed, and produced the song "All Dis Music." FAC ¶ 25. On October 6, 1986 Wright executed a "Contract for Recording Artists" (the Recording Agreement) with Defendant DJ International Records (DJ International). R. 37 at 22, McNally Decl., Exh. 1, Rec. Agrmt.[3] No other entities or individuals were parties to the Recording Agreement. *Id.* Pursuant to the Recording Agreement, DJ International "employ[ed] [Wright] to render personal services for [DJ International] or on [its] behalf for the purpose of recording and making phonograph records." Rec. Agrmt. ¶ 1. Wright agreed that "[a]ll recordings hereunder and all records and production made therefrom, together with sound recording copyrights therein and the performances embodied therein, shall be entirely [DJ International's] property, free of any claims whatsoever by [Wright] or any person deriving any rights or interests from [Wright]." *Id.* ¶ 8. In exchange, Wright was to receive, for records sold

---

[2]The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Wright. *See St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016) (internal citations omitted).

[3]Generally, a court considering a Rule 12(b)(6) motion to dismiss only considers the complaint. *Johnson v. Darren Finding Law Firm, PLC*, 2023 WL 5289338, at *6 (N.D. Ill. August 17, 2023). However, as with most rules, there are exceptions. On a motion to dismiss, a court may also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Here, applying the incorporation-by-reference doctrine, the Court may consider the Recording Agreement as part of the pleadings, though not attached to the FAC, because Wright discusses the Recording Agreement throughout the FAC, and because it is central to Wright's claims. FAC ¶¶ 69–78, 97, 101; *see Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018); *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 773 (N.D. Ill. 2011). Moreover, Wright does not contest the validity or authenticity of the Recording Agreement in response. *See Mueller*, 880 F.3d at 895.

in the United States: a royalty of ten percent (10%) for compositions performed by Wright and recorded by DJ International during the first term of the Recording Agreement; twelve percent (12%) for the second term of the Recording Agreement; and fifteen percent (15%) for the subsequent term of the agreement, if renewed. *Id.* ¶ 3. For records sold outside of the United States, Wright was to be paid "a royalty at the rate of one-half the aforesaid royalties [sic], for the respective terms, of the retail list price (less governmental taxes and duties) . . . ." *Id.* DJ International also retained the right to elect to base the percentages of records sold in Europe "upon the retail list prices in the country of manufacture, or the retail list prices in England." *Id.*

The Recording Agreement further provided that all of Wright's performances were "made for hire within the scope of [his] employment, and that [DJ International] [is] to be considered the author for the purpose of copyrights in sound recordings and . . . own[s] all of the rights comprised in such copyrights, including any rights to renew and extend the copyrights." Rec. Agrmt. ¶ 8. The Recording Agreement also provided that Wright granted DJ International and its licensees "the right to make records or other reproductions of the performances embodied in [Wright's] recordings by any method now or hereafter known, and to sell and deal in the same . . . ." *Id.*

Eight days after Wright assigned DJ International all rights to his musical recordings via the Recording Agreement, the United States Copyright Office issued a copyright registration for "1 sound cassette + lyrics" entitled "All Dis Muzic." FAC ¶ 25; McNally Decl., Exh. 3, 1986 Copyright.[4] Wright alleges, however, that he is the

---

[4] The Court may take judicial notice of the copyright registration. *See Blue Book Servs., Inc. v. Farm J., Inc.*, 435 F. Supp. 3d 912, 916 (N.D. Ill. 2020).

only holder of the October 14, 1986 copyright of the song, as he applied for copyright registration before entering into the Recording Agreement. FAC ¶¶ 25, 98–104.

On February 4, 1987, Wright and Pop Star entered into an Exclusive Songwriter's Agreement (the Publishing Agreement, and, together with the Recording Agreement, the Agreements) under which Pop Star "employ[ed] [Wright] to render his services as a songwriter and composer . . . ." McNally Decl., Exh. 2, Pub. Agrmt. ¶ 1.[5] No other entities or individuals were parties to the Publishing Agreement. *Id.* Under the Publishing Agreement, Wright agreed to:

> irrevocably and absolutely assign[], transfer[], set[] over and grant[] to [Pop Star], its successors and assigns . . . all rights and interests of every kind, nature and description in and to the results and proceeds of [Plaintiff's] services hereunder . . . which musical works have been written, composed, created, or conceived, in whole or in part, by [Plaintiff] . . . and which may hereafter during the term hereof, be written, composed, created or conceived by [Plaintiff] . . . and which are now owned or controlled and which may, during the term hereof, be owned or controlled, directly or indirectly, by [Plaintiff] . . . including the title, words and music of each composition, and all world-wide copyrights . . . .

*Id.* ¶ 3. In exchange, Pop Star agreed to pay Wright a non-returnable advance against royalties in the amount of $400.00, and royalties in the amount of: "Ten percent (10%) of the retail selling price upon each and every printed copy of each and every arrangement and edition thereof printed, published and sold by [Pop Star] and paid for, after deduction of each and every return turn, in the United States"; and Fifty percent (50%) of any and all net sums, after deduction of foreign taxes, actually

---

[5]Like the Recording Agreement, Wright discusses the Publishing Agreement throughout the FAC and it is central to his claims, FAC ¶¶ 69–78, 97, 101; accordingly, it is considered part of the pleadings and the Court may consider it, *see Mueller*, 880 F.3d at 895; *Geinosky*, 675 F.3d at 745 n.1.

received (less any costs for collection) by [Pop Star] from sales and uses directly related to subject musical compositions in countries outside of the United States," among several other categories of sales. *Id.* ¶ 8.

"All Dis Music" was "originally released on the compilation 'House Sound of Chicago, Volume 3, Acid Tracks' in 1987 on FFRR/London Records and as a '12' [inch] single with House Music legend Francis Nicholls pka Frankie Knuckles 'Only the Strong Survive' in 1988 [and] 1992." FAC ¶ 35. "All Dis Music" was manufactured, marketed, and distributed under the FFRR label in the United Kingdom and became a classic hit. *Id.* ¶ 36. The song was never released in North America. *Id.* Wright further alleges that DJ International "conveyed authority over the sale, manufacture, and distribution of a 'test pressing' for 'All Dis Music'" without informing Wright of same. *Id.* ¶ 25. Wright alleges that, from 1987 onward, DJ International and Pop Star Publishing (Pop Star) received profits, which he was unaware of, but belonged to him, from "All Dis Music." *Id.* ¶ 31. Defendants DJ International, Pop Star, and John Does 1–10, according to Wright, failed to inform him that the song(s) he composed, produced, and performed had been secretly licensed, published, and marketed across the world in various formats, including but not limited to, vinyl album compilations, compact discs, cassettes, "12" inch singles, digital streaming, and downloads that created substantial amounts of revenue. *Id.* ¶ 33. Wright alleges that Defendants breached certain agreements by failing to account and share the revenue generated from the licensing and worldwide retail sales of the song at the royalty rate of ten

percent (10%) and publishing splits of fifty percent (50%) as set forth in the Agreements between Wright and Defendants. *Id.* ¶ 34.

On September 24, 2021, Wright filed this suit against Defendants asserting nine causes of action, seeking more than $975 million dollars in damages, and equitable relief. R. 1. SoundExchange moved to dismiss the complaint under Rule 12(b)(6). R. 19. In lieu of responding to SoundExchange's motion to dismiss, Wright filed a motion for leave to amend the complaint, R. 31, which the Court granted, R. 35. Wright then filed the FAC, asserting causes of action for declaratory judgment (Count I), copyright infringement (Count II), contributory copyright infringement (Count III), breach of contract (Count IV), breach of warranty of good faith and fair dealing (Count V), unjust enrichment (Count VI), constructive trust (Count VII), violation of the ICFA (Count VIII), and for "false unsubstantiated allegations" (Count IX[6]). FAC. Wright brings all claims against all Defendants: DJ International, Pop Star, London Records/FFRR, Bolloré SE, Vivendi SE, The Seagram Company Ltd., Warner Bros., Virgin EMI, SoundExchange, BMI, Universal Music Group, Harmless Records, Demon Music, Peermusic, and Polydor Ltd.[7] SoundExchange now moves to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(6). Mot. Dismiss.

---

[6]This claim is labeled as "Count VIII" in the FAC, but it is actually the ninth cause of action alleged, so the Court refers to the "false unsubstantiated allegations" claim as Count IX.

[7]The Court appointed the U.S. Marshals Service (USMS) to serve all Defendants shortly after Wright filed his original complaint. R. 6. For reasons not at all attributable to Wright, service still has not been effectuated on almost all Defendants. Therefore, only SoundExchange has appeared and filed a responsive pleading. The Court addresses the impact of this Order and next steps as to the remaining Defendants later in this Order.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

Claims alleging fraud, however, must also satisfy the heightened pleading requirement of Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). So, generally speaking, Rule 9(b) requires a complaint to "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923

(7th Cir. 1992) (cleaned up).[8] Put differently, a complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (cleaned up).

## Analysis

As an initial matter, the Court notes that it has subject matter jurisdiction over Wright's copyright infringement claims and related declaratory judgment claim pursuant to 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over the state law claims under § 1367. Although Wright alleges that the Court has diversity jurisdiction, FAC ¶ 3, it does not appear from the face of the FAC that complete diversity exists. A Court has diversity jurisdiction under 28 U.S.C § 1332(a) only when there is complete diversity, which "exists only if none of the defendants has the same citizenship as any plaintiff." *City of E. St. Louis, Illinois v. Netflix, Inc.*, 83 F.4th 1066, 1070 (7th Cir. 2023). Wright alleges that he is a "resident" of the State of California. FAC ¶ 8. Residency is not necessarily the same as citizenship for purposes of diversity jurisdiction. *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012) (diversity citizenship depends on State of domicile, not residency). Assuming, for now (given the Court's jurisdiction is secure under §§ 1331, 1338, and 1367, the Court need not check this assumption at this time) that Wright is a citizen of California, there is no complete diversity, as he alleges that Defendant Universal

---

[8]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Music Group is a California corporation. FAC ¶ 19. The Court addresses the impact of the lack of diversity jurisdiction later in this Order.

Because neither party disputes that Illinois substantive law applies to the state law claims, the Court applies Illinois law. *See Med. Protective Co. of Fort Wayne, Ind. v. Am. Int'l Specialty Lines Ins. Co.*, 911 F.3d 438, 445 (7th Cir. 2018).

SoundExchange advances three primary reasons for dismissal. First, Wright's state law claims fail because he has not alleged any wrongful conduct by SoundExchange. Mot. Dismiss at 5–8. Second, Wright's copyright claims fail because he cannot establish ownership of a valid copyright. *Id.* at 8–11. Lastly, all of Wright's claims should be dismissed because they are barred by the applicable statutes of limitations. *Id.* at 11–14. The Court starts with the last argument, as it could be dispositive.

## I.       Statutes of Limitations

Because a statute of limitations defense is an affirmative defense, courts only grant a motion to dismiss based on a statute of limitations defense "where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Vergara v. City of Chicago*, 939 F.3d 882, 886 (7th Cir. 2019) (cleaned up). "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (cleaned up). It is with these principles in mind that the Court addresses SoundExchange's timeliness arguments.

### A. Breach of Contract

In Count IV, Wright alleges a claim for breach of contract. There is a ten-year statute of limitations for a breach of written contract in Illinois." *Armstrong v. Guigler*, 673 N.E.2d 290, 293 (Ill. 1996) (citing 735 ILCS 5/13-206). SoundExchange argues that the only two contracts referenced in the FAC are the 1986 Recording Agreement and the 1987 Publishing Agreement. Mot. Dismiss at 12. Since Wright alleges that DJ International and Pop Star failed to pay him royalties under those agreements, asserts SoundExchange, Wright's claims would have accrued when those defendants first failed to pay him, which was more than ten years ago. *Id*. Therefore concludes SoundExchange, Wright's breach of contract claim is barred by the statute of limitations. *Id*.

True, in his FAC, Wright alleges that that entered into Agreements with DJ International and Pop Star. *See* FAC ¶ 69. And both of the Agreements were executed in 1986 and 1987 respectively. Rec. Agrmt.; Pub. Agrmt. But there is nothing in the FAC about Wright's contract with SoundExchange. That is, there is nothing on the face of the FAC that reveals that the relief sought by Wright against SoundExchange is barred by the applicable statute of limitations. As the Seventh Circuit has instructed, "[a]s long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health,* 782 F.3d at 928. Here, viewing the

allegations of the FAC in the light most favorable to Wright, as the Court must, the Court cannot say that the allegations of the FAC plainly reveal that his breach of contract claim against SoundExchange is time-barred. Whether Wright, on the other hand, has sufficiently pled a breach of contract cause of action is another matter, which the Court addresses later in this Order.

### A. Unjust Enrichment/Constructive Trust

In Count VI, Wright asserts a claim for unjust enrichment. And in Count VII he asserts a claim for constructive trust. As the statute of limitations for both claims is five years, *see* 735 ILCS 5/13-205; *Sundance Homes v. County of DuPage*, 746 N.E.2d 254, 263 (Ill. 2001), the Court addresses both claims together.

SoundExchange argues that both claims are time-barred since Wright filed this action beyond the five-year statute of limitation. Mot. Dismiss at 12–13. The statute of limitations, insists SoundExchange, began to run once Wright "knew, or reasonably should have known, that he ha[d] been injured and that his injury was wrongfully caused." *Id.* (quoting *Rush Univ. Med. Ctr. v. Draeger, Inc.*, 2017 WL 5505021, at *2 (N.D. Ill. Nov. 16, 2017)).

In Count VI, Wright alleges that Defendants were unjustly enriched by "exploit[ing] [Wright's works], including through the worldwide sale, license and/or distribution of those works in both physical formats as well as through digital service providers such as Spotify, iTunes, Band Camp, Soundcloud and YouTube," through which Defendants "have received substantial income" and have "failed and refused to pay [Wright his] rightful share of that income." FAC ¶¶ 81–82. Similarly, in Count

VII, Wright alleges a claim for a constructive trust based on Defendants' failure and refusal to pay Wright "his rightful share of" the substantial income Defendants have received from their "exploitation of" Wright's music. *Id.* ¶ 86. As with the breach of contract claim against SoundExchange, given the sparsity of the allegations in the FAC against SoundExchange itself (as well as all Defendants apart from DJ International and Pop Star) and in viewing the allegations of the FAC in the light most favorable to Wright, the Court cannot say that Wright's unjust enrichment and constructive trust claims are time-barred on the face of the FAC. The Court addresses below whether the FAC has sufficiently pled claims for unjust enrichment and constructive trust.

### B. ICFA and False Unsubstantiated Allegations

In Count VIII, Wright alleges a violation of the ICFA by all Defendants. Wright alleges that the Defendants committed deceptive acts and practices, by among other things, selling and distributing the physical and digital recordings under the representation that they owned the work. FAC ¶ 90. SoundExchange asserts that Wright's ICFA claim is time-barred because the ICFA has a three-year statute of limitations and Wright knew of his injury as early as 2005, but did not file suit until 2021. Mot. Dismiss at 13.

The ICFA has three-year statute of limitations. 815 ILCS 505/10a(e). "A claim brought under [the] ICFA accrues when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Tammerello v. Ameriquest Mortg. Co.*, 2006 WL 2860936, at *7 (N.D. Ill.

Sept. 29, 2006) (cleaned up). Here, while it may be true that Wright was aware of the fact that DJ International and Pop Star had not honored their respective agreements, nothing on the face of FAC suggests that this claim is time-barred as to SoundExchange. As with the previously discussed state law claims, it is another question whether the FAC sufficiently states an ICFA claim.

### C. Copyright Infringement

In Count II, Wright asserts a cause of action for willful direct copyright infringement, in which he alleges that he is the owner of the copyright for "All Dis Music" and Defendants infringed on his copyright by distributing, selling and/or licensing "both physical and digital copies of ["All Dis Music"], all without authorization or consent of Mr. Wright." FAC ¶¶ 44–56. Similarly, in Count III, Wright alleges a cause of action for contributory copyright infringement, in which he alleges he is the sole owner of the copyright for "All Dis Music," and Defendants "had actual and constructive knowledge of the infringing activity that occurred and is occurring with respect to the Infringed Compositions, and induced, caused, participated in, aided and abetted and/or materially contributed to such infringing conduct by Defendants." *Id.* ¶¶ 58–67. In Count I, Wright also seeks a declaratory judgment that he is the owner of the copyright of "All Dis Music." *Id.* ¶ 43.

SoundExchange contends Wright's copyright claims are beyond the Copyright Act's three-year statute of limitations. Mot. Dismiss at 13–14 (citing 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.")). The Seventh Circuit

"recognizes a discovery rule in copyright cases." *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014). That is, the "copyright statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights." *Id.* (cleaned up).

SoundExchange concedes that "any infringing act within [a] three-year look-back period . . . can form the basis of an infringement claim," but argues that such rule does not apply here, as it only "applies to ordinary infringement suits, not suits in which the central dispute is copyright *ownership*." Mot. Dismiss at 13 (quoting *Consumer Health Info. Corp. v. Amylin Pharms., Inc.*, 819 F.3d 992, 996 (7th Cir. 2016) (emphasis in original)). "[C]opyright claims premised on disputes about ownership accrue when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation." *Consumer Health Info.*, 819 F.3d at 996 (cleaned up).

In *Consumer Health Info.*, the plaintiff filed suit for copyright infringement, alleging that the defendant induced the plaintiff to sign a contract—by which the plaintiff expressly assigned the copyright in materials created by the plaintiff to the defendant—via fraud or economic duress, and therefore the contract should be rescinded. 819 F.3d at 994. Accordingly, the plaintiff alleged that it owned the copyright, and the defendant had infringed the copyright by using the materials. *Id.* The Seventh Circuit found that the three-year statute of limitations began running at the time the plaintiff signed the contract, as the plaintiff knew at that time that the defendant claimed ownership of the copyright at issue via express assignment.

14

*Id.* at 996. The lawsuit, brought more than three years after the contract was executed, was beyond the statute of limitations. *Id.*

Here, Wright alleges that he owns the copyright for "All Dis Music," as he applied for copyright registration before entering into the Recording Agreement. FAC ¶¶ 39, 43, 45, 60, 98–104. SoundExchange, relying on the Agreements, argues that Wright assigned his right (including copyrights) in title and interest in all his compositions to DJ International and Pop Star. Mot. Dismiss at 3–4 (citing Rec. Agrmt. ¶ 8; Pub. Agrmt. ¶ 3). The FAC also alleges that SoundExchange "has falsely implied that [Wright] assigned his rights to Defendant DJ International/Pop Star with no allotment or expectation of royalty payments and publishing split of revenue derived from Plaintiff's copyrighted works," and lists the percentage of royalties agreed to in the Agreements. FAC ¶ 97 (citing Rec. Agrmt. ¶¶ 3, 5, 6; Pub. Agrmt. ¶¶ 7, 9). Construing the allegations in the light most favorable to Wright, the FAC alleges that Wright assigned his copyrights to Pop Star and DJ International in exchange for royalties. *Id.* This reading is further supported by an exhibit attached to the FAC, a letter written by Wright to DJ International and Pop Star in September 2019, in which Wright gives notice of termination of the assignment of the copyright pursuant to Section 203 of the Copyright Act. *See* R. 36-1, 2019 Not. Term. The Court addresses the letter later in this Order.

Although Wright attempts to frame his claims as one for infringement, the "gravamen of [his] copyright [claims]" depends on the validity of the assignment of his copyrights to DJ International and Pop Star via the Agreements. *Consumer*

*Health Info.*, 819 F.3d at 996; *see also Rice v. Music Royalty Consulting, Inc.*, 397 F. Supp. 3d 996, 1009 (E.D. Mich. 2019). Accordingly, the Court agrees with SoundExchange that Wright's copyright claims are really ones for copyright ownership, and therefore accrued "when the ownership dispute becomes explicit—that is, when the claimant has notice that his claim of ownership is repudiated or contested." *Consumer Health Info.*, 819 F.3d at 996. Here, as in *Consumer Health Info.* and *Rice*, the Court finds that Wright's copyright claims therefore accrued when he signed the Recording Agreement in 1986 and the Publishing Agreement in 1987. His copyright claims are therefore well beyond the statute of limitations. The Court finds that the FAC and the exhibits attached thereto (and referenced therein and attached to the motion to dismiss[9]), provide everything necessary to satisfy the affirmative defense. Accordingly, SoundExchange's motion to dismiss Wright's copyright claims (Counts II and III) is granted. And, to the extent that these claims are indeed more properly viewed as ordinary copyright infringement claims rather than a dispute about ownership, they would indeed be timely (at least, as to any infringement occurring in the three years preceding the filing of this action), but fail on the merits, as discussed below.

---

[9]As stated throughout this Order, because Wright referenced the Agreements in the FAC and they are central to his claims, they are considered part of the pleadings and the Court can consider them for purposes of a statute of limitations analysis. *See Allstate Life Ins. Co. v. Peoplesoft, Inc.*, 2004 WL 1375383, at *2 (N.D. Ill. May 26, 2004) (considering contract referenced in complaint and attached to motion to dismiss to determine whether the contract was for goods and services, and accordingly what statute of limitations applied, and finding that claim was time-barred).

Relatedly, as noted above, Wright also seeks a declaratory judgment that he "is now and at all relevant times has been the owner of the copyrights in the Recording 'All Dis Music.'" FAC ¶ 43. The Declaratory Judgment Act "allows federal courts, in their discretion, to render declaratory judgments only where there exists an actual controversy." *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995) (cleaned up). In deciding whether there is an actual controversy, courts "focus on whether the facts alleged show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Bell v. Taylor*, 827 F.3d 699, 711 (7th Cir. 2016) (cleaned up). "Although the federal declaratory judgment statute does not contain a statute of limitations, every federal appellate court to address the issue has held that a claim for declaratory judgment remains barred to the same extent that a time bar applies to the underlying claim for substantive relief." *Greenhill v. Vartanian*, 2017 WL 5294039, at *6 (N.D. Ill. Nov. 13, 2017) *aff'd,* 917 F.3d 984 (7th Cir. 2019).

Here, Wright seeks a declaration that he owns the copyright to "All Dis Music." This relief, however, is identical to the relief sought in connection with his copyright infringement claims. As the Court has found that Wright's copyright claims are barred by the statute of limitations, this count must also fall. *See Greenhill*, 2017 WL 5294039, at *6.

The Court must note, however, that in his response, Wright appears to argue that Defendants are violating the copyright to "All Dis Music" because he terminated

17

the copyright ownership that he had assigned to DJ International and Pop Star. Resp.

at 4 (citing *Waite v. UMG Recordings, Inc.*, 450 F. Supp. 3d 430, 432 (S.D.N.Y. 2020)).

As the court in *Waite* explained, pursuant to Section 203 of the Copyright Act of 1976,

17 U.S.C.A. § 203,

> [a]uthors of works created on or after January 1, 1978 may terminate transfers of a license or copyright in those works thirty-five years from the date of the grant's execution or, if the grant covers publication rights, the earlier of thirty-five years after the work's publication or forty years after the execution of the grant.
> ***
> Termination under Section 203 is available for all works "executed by the author," other than those "made for hire." Termination is not automatic. The earlier grant will remain in effect absent a termination notice. These notices must include the effective date of termination, which may fall on any date in the five-year period after the work becomes terminable, and other requirements set forth by regulation. The notice must be recorded with the Copyright Office and served upon the grantee prior to the effective date of termination. Upon the effective date of termination, the grant is terminated and the copyright reverts to the author.
> ***
> For instance, if an author executed a grant transferring the copyright in Work A in January 1980, the grant for Work A may be terminated on a date between January 2015 (thirty-five years from the date of execution) and January 2020. If the author selected January 1, 2018 as the effective date of termination, assuming the termination notice comports with all applicable requirements, the grantee can continue to distribute Work A until December 31, 2017. On January 1, 2018, copyright ownership reverts to the author. At that point, any continued exploitation of that work by the grantee is an infringement on the author's copyright.

450 F. Supp. 3d at 433–34.

Here, Wright assigned his copyright to "All Dis Music" to DJ International on

October 6, 1986, which is earlier than the song was published in 1987. FAC ¶¶ 35,

97; *see also* Rec. Agrmt. Therefore, the earliest date the grant could be terminated

was October 6, 2021 (35 years after the Recording Agreement was executed). The

Court agrees with the analysis in *Waite* that a copyright infringement claim based upon a defendant grantee's refusal to recognize a plaintiff grantor's termination right cannot accrue until the termination right has vested. 450 F. Supp. 3d at 437. Therefore, any claim based upon Defendants' refusal to recognize Wright's termination notice could not begin to accrue until October 6, 2021 and could not be tardy.

Unlike in *Waite*, however, the FAC does not allege that Wright terminated the copyright assignment or that Defendants refused to recognize the termination right. *See* FAC. True, Wright attaches a notice of termination as an exhibit to the FAC. 2019 Not. Term. Pursuant to the notice of termination, Wright purported to terminate the grant under Section 203 "effective immediately upon [DJ International and Pop Star's] receipt of [the] notice," sent on September 20, 2019. *Id.* However, as stated above, pursuant to the FAC's allegations and documents referenced therein, the earliest date Wright could have terminated the assignment was October 6, 2021. Moreover, Section 203 provides that a notice of termination must be served "not less than two or more than ten years" before the effective date, 17 U.S.C.A. § 203(a)(4)(A), meaning a notice of termination cannot be "effective immediately" under the statute. And, as stated above, Section 203 does not provide for a termination notice for any "work made for hire." *Id.* § 203(a). Here, the Agreements state that Wright's works were made "for hire." *See* Rec. Agrmt. ¶ 8 (Wright's "performances in the sound recordings hereunder were made for hire within the scope of your employment and that [DJ International is] to be considered the author for the purpose of copyrights in

sound recordings"); Pub. Agrmt. ¶ 11 (Wright "is deemed to be a 'writer for hire' hereunder with full rights of copyright renewal vested in publisher").

As an initial matter, the Court is not convinced that notice of termination, on its own, is sufficient to put Defendants on notice that Wright was bringing a copyright infringement claim based upon his termination of the copyright assignment to DJ International and Pop Star or that Defendants continued distributing "All Dis Music" without Wright's consent after any such termination. Even if it was, on its face, the notice of termination does not comply with Section 203's requirements. Accordingly, to the extent Wright attempts to bring a copyright infringement claim against SoundExchange based upon SoundExchange's continued dissemination of "All Dis Music" after Wright terminated the copyright assignment, such a claim fails on the merits, but would not be time barred.

In sum, the Court finds that Wright's copyright claims and related declaratory judgment claim (Counts I–III), as currently pled, are barred by the statute of limitations. On the face of the FAC, the Court cannot find that the remaining counts are untimely. The Court now turns to SoundExchange's motion to dismiss the remaining counts of the FAC for failure to state a claim.

## II.     Failure to State a Claim

### A. Breach of Contract and Duty of Good Faith and Fair Dealing

Under Illinois law, to state a claim for breach of contract, a plaintiff must allege: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant

20

damages." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010), as amended (Dec. 16, 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)). "A duty of good faith and fair dealing is implied into every Illinois contract." *Barwin v. Vill. of Oak Park*, 54 F.4th 443, 454 (7th Cir. 2022) (cleaned up). It is not, however, a standalone cause of action in Illinois. *Burger v. Spark Energy Gas, LLC*, 507 F. Supp. 3d 982, 990 (N.D. Ill. 2020); *see also Danqing Huo v. Synchrony Bank*, 2020 WL 2128729, at *3 (N.D. Ill. May 5, 2020).

SoundExchange argues that the Court should dismiss the claims for breach of contract and breach of warranty (implied covenant) of good faith and fair dealing because Wright has not alleged any acts or omissions by SoundExchange that could constitute a breach of any agreement with SoundExchange. Mot. Dismiss at 6. The Court agrees.

For starters, Wright fails to allege the existence of any contract between himself and SoundExchange. That alone dooms his claims. "It is manifest that for a plaintiff to state a breach of contract claim, he must plausibly allege the existence of a contract." *Simoni v. United Airlines Holdings, Inc.*, 2022 WL 407713, at *5 (N.D. Ill. Feb 10, 2022); *see also W. Consol. Premium Properties, Inc. v. MC Risk Servs. LLC*, 2012 WL 12973142, at *3 (N.D. Ill. Sept. 11, 2012) (dismissing breach of contract claims where plaintiffs did not allege they entered into a contract with the defendant). Here, Wright alleges that he entered into agreements with DJ International and Pop Star, but alleges nothing about any contract or agreement (oral, written, or otherwise) with any other Defendants, including SoundExchange. FAC ¶ 69.

True, a "document filed by a person who is representing himself must be liberally construed." *Slaughter v. United States Cellular,* 2023 WL 9051307, at *4 (E.D. Wisc. Dec. 29, 2023) (cleaned up). That is, a "complaint filed by someone representing himself, 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Here, liberally construing the allegations in the FAC and drawing all reasonable inferences in Wright's favor, Wright fails to plausibly allege the existence of a contract, let alone a breach of that contract by SoundExchange. As SoundExchange argues, it is not the Court's job to "to prop up deficient pleadings by reading in allegations of breach [of contract] that do not exist." Mot. Dismiss at 6 (quoting *Vermette v. Cozad Asset Mgmt.*, Inc., 2020 WL 1456664, at *11 (Ill. App. Ct. Mar. 19, 2020) (unpublished)).

And, as noted above, "[w]hile all Illinois contracts contain an implied obligation to act in good faith, this obligation does not provide a person with a separate, independent cause of action." *Danqing Huo*, 2020 WL 2128729, at *3. Therefore, because Wright fails to sufficiently plead a breach of contract, his claim for breach of the implied covenant of good faith and fair dealing must also be dismissed. *See id.* (dismissing breach of good faith and fair dealing claim where plaintiff failed to state a breach of contract claim).

Therefore, the motion to dismiss Counts IV and V is granted.

## B. Unjust Enrichment

The Court next considers Wright's unjust enrichment claim. "To state a claim for unjust enrichment under Illinois law, a plaintiff must allege that "the defendant has unjustly retained a benefit to the plaintiff's detriment and that [the] defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 886 (7th Cir. 2022) (cleaned up). As the Seventh Circuit has explained, "[b]ecause it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." *Id.* (cleaned up). Moreover, "when a contract governs the relationship between two parties, unjust enrichment has no application." *Id.* (cleaned up). And "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

SoundExchange argues that Wright's unjust enrichment claim fails because it is inextricably tied to his copyright claims, which he cannot assert. Mot. Dismiss at 6. That is, without ownership of the copyright, reasons SoundExchange, Wright cannot plead that any of the Defendants retained a benefit, to Wright's detriment, from their alleged exploitation. *Id.* at 7 (citing *Brinley Holdings, Inc. v. Husch Blackwell LLP*, 2022 WL 80271, at *6–7 (N.D. Ill. Jan. 7, 2022)). The Court agrees. Wright alleges that Defendants "have continued to exploit the Wright Works including, through the worldwide sale, license and/or distribution of those works in

23

both physical formats as well as through digital service providers such as Spotify, iTunes, Band Camp, Soundcloud and YouTube" and from which they have "received substantial income . . . and have failed and refused to pay [Wright his] rightful share of that income." FAC ¶¶ 81–82. The allegations underlying Wright's unjust enrichment claim are interwoven with those underlying his copyright infringement claims; that is, Defendants allegedly retained a benefit to Wright's detriment from their use of his copyrighted song. And, as explained further below, *see infra* Section II.F, the Court finds that Wright's copyright claims fail because he fails to satisfy the ownership prong of a copyright infringement claim, and therefore his unjust enrichment claim based upon the same allegations must fail.[10] *See Cleary*, 656 F.3d at 517.

To the extent that Wright attempts to plead that SoundExchange was unjustly enriched by retaining royalties owed to Wright under the Agreements, such a claim is not barred by the existence of a contract between the parties, because, as stated above, Wright has not alleged that SoundExchange was the party to any contract with Wright. *C.f. Gociman*, 41 F.4th at 886. However, Wright has not alleged that *SoundExchange* unjustly received any portion of the royalties that were owed *to Wright* by DJ International or Pop pursuant to the Agreements. *See Brinley Holdings*, 2022 WL 80271, at *7 ("Unjust enrichment . . . is a means of recovering something that the defendant is not entitled to but is unfairly possessing to the plaintiff's

---

[10]Although not raised by SoundExchange, the Court notes that an unjust enrichment claim premised on conduct proscribed by the Copyright Act is preempted by the Copyright Act. *See Carter v. Pallante*, 256 F. Supp. 3d 791, 802–03 (N.D. Ill. 2017).

detriment."). To the extent that he alleges that SoundExchange made money based on selling, licensing, or distributing "All Dis Music" without paying him for the use of his copyrighted work, as discussed above, that claim is intertwined with his copyright infringement claims and therefore fails. *See Carter v. Pallante*, 256 F. Supp. 3d 791, 804 (N.D. Ill. 2017) (dismissing unjust enrichment claim where no agreement providing for royalties existed between the parties; "rather, the royalties and licensing revenues are payments [plaintiff] alleges the Publisher Defendants have wrongfully obtained by licensing songs to which he owns the copyrights without permission to do so"). As such, the Court grants the motion to dismiss Count VI.

### C. Constructive Trust

The Court now turns to Wright's claim for constructive trust. "A constructive trust is an equitable remedy imposed against one who, by some form of wrongdoing such as actual or constructive fraud, breach of a fiduciary duty, duress, coercion, or mistake, has been unjustly enriched." *Schultz v. Schultz*, 696 N.E.2d 1169, 1173 (Ill. App. Ct. 1998). "A court may not impose a constructive trust unless the complaint contains specific allegations of wrongdoing or unconscionable conduct and the grounds for imposing the trust are so clear, convincing, strong, and unequivocal as to lead to one conclusion." *Id.*

SoundExchange contends that Wright's constructive trust claim also fails because Wright has not alleged any wrongdoing by SoundExchange. Mot. Dismiss at 7–8. As discussed below, Wright has not pled that SoundExchange engaged in statutory fraud, *see infra* Section II.D. Nor has Wright pled other fraudulent conduct

25

committed by SoundExchange, nor the existence of a fiduciary relationship between himself and SoundExchange. Accordingly, the constructive trust claim fails. *See Est. of Brown v. Arc Music Grp.*, 830 F. Supp. 2d 501, 514 (N.D. Ill. 2011), *aff'd,* 523 F. App'x 407 (7th Cir. 2013) ("[Plaintiff's] claim for a constructive trust fails where it has adequately pleaded neither fraud nor the existence of a fiduciary relationship."). Therefore, the motion to dismiss Count VII is granted.

### D. ICFA

In Count VIII, Wright alleges a violation of the ICFA by all Defendants. Wright alleges that Defendants committed deceptive acts and practices, by among other things, selling and distributing the physical and digital recordings under the representation that they owned the work. FAC ¶ 90.

To state a cause of action under the ICFA, a plaintiff must plausibly allege: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rel[ies] on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012). A plaintiff alleging an ICFA claim "must state with particularity and specificity the deceptive manner of defendant's acts or practices, and the failure to make such averments requires the dismissal of the complaint." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002)

SoundExchange argues that this claim also fails because Wright fails to allege any conduct, let alone wrongful conduct by SoundExchange. Mot. Dismiss at 8. The

Court agrees. Wright does not attribute any specific misconduct to any Defendants apart from DJ International and Pop Star in his FAC. His allegations "fall short of alleging with particularity the facts establishing the 'who, what, when, where, and how' of the fraud or misrepresentation." *See Heard v. Trax Recs., Inc.*, 2021 WL 3077668, at *5 (N.D. Ill. July 21, 2021) (dismissing similar claims of misrepresentation and fraud allegedly committed by defendant record labels). Accordingly, the Court dismisses Count VIII.

### E. False Unsubstantiated Allegations

In Count IX, Wright alleges that Defendants have engaged in misconduct. SoundExchange moves to dismiss this count, asserting that it does not state a legally cognizable claim. Mot. Dismiss at 8.

As an initial matter, the Seventh Circuit has instructed that "a complaint need not plead legal theories, which can be learned during discovery." *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). So, the fact that the title of the count does not evince a cause of action is of no import. And, as the Seventh Circuit has expressed, courts in examining the facts and matching them up with the stated legal claims, "give the plaintiff the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Bissessur v. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (cleaned up). That said, "Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 687.

Here, the Court finds that this count does nothing more than state various generalized grievances, but fails to provide the necessary facts to establish a cause of action. Therefore, the motion to dismiss Count IX is granted.

### F. Copyright Infringement

Although the Court found that Wright's copyright infringement claims are time-barred, an analysis of whether Wright owns the copyright is necessary to resolving SoundExchange's motion to dismiss Wright's unjust enrichment claims, so the Court engages with the parties' arguments as to the merits of Wright's copyright infringement claims. SoundExchange argues that Wright's copyright infringement claims fail because he cannot establish that he owned the copyright. Mot. Dismiss at 8–11. The Court agrees.

"To establish copyright infringement, a plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017) (cleaned up). "It is elementary that the lawful owner of a copyright is incapable of infringing a copyright interest that is owned by him; nor can a joint owner of a copyright sue his co-owner for infringement." *Warrick v. Roberts*, 34 F. Supp. 3d 913, 919 (N.D. Ill. 2014) (cleaned up). SoundExchange contends that Wright granted and/or assigned all rights in "All Dis Music" (among other works), including the copyrights, when he entered into the Recording Agreement and Publishing Agreement with DJ and Pop Star, respectively. Mot. Dismiss at 9 (citing Rec. Agrmt. ¶ 8; Pub. Agrmt. ¶ 3 (Wright "irrevocably and absolutely assigns . . . to [Pop Star], its

successors and assigns . . . all rights and interests of every kind . . . in [Wright's] musical works [that] *have been written*, composed, created, or conceived, in whole or in part, by [Wright] . . . and which *are now owned or controlled* . . . by [Wright] . . . including . . . all world-wide copyrights . . . .") (emphases added)). Therefore, argues Sound Exchange, "[a]ny and all exploitation of 'All Dis Muzic' by DJ and Pop Star, as well as by any of their successors, assignees, and licensees, was authorized and done pursuant to DJ's and Pop Star's ownership of the underlying copyrights, free from any adverse claim by [Wright]." Mot. Dismiss at 9.

Here, Wright does not dispute that he signed the Agreements. On the contrary, he relies on them in support of his claims for breach of contract seeking royalties. *See* FAC ¶ 71; *see also id.* ¶ 97. Like the court in *Warrick*, the Court finds the broad language assigning all rights, including worldwide copyrights, in all music written and owned and controlled by Wright to Pop Star to be dispositive. *Warrick*, 34 F. Supp. 3d at 914, 919 (finding that similar release in publishing agreement "could not be more clear: [plaintiff-artist] was selling in its totality her interest in the musical works," and "any ordinary reader of the English language would be on notice that the rights granted to [defendant-producer] were extremely broad" and therefore plaintiff could not bring copyright infringement claims against producer or its licensees). By signing the Agreements, Wright assigned all interest in the copyrights of his music, including "All Dis Music" to DJ International and Pop Star.

The Court agrees with SoundExchange that Wright's reliance on the copyright registration for "All Dis Music" does not change the outcome. Mot. Dismiss at 11.

Assignment of copyrights is governed by copyright law, and, as stated above, the plain language of the Agreements is broad, assigning existing and future copyrights in Wright's compositions to DJ International and Pop Star. *See Kast v. Chrysler Corp.*, 1997 WL 305307, at *2 (N.D. Ill. May 30, 1997); *see also Warrick*, 34 F. Supp. 3d at 919.

Accordingly, because Wright assigned all rights in the copyright to DJ International and Pop Star via the Agreements, he does not satisfy the ownership prong of a copyright infringement claim and, even if they were timely, his copyright infringement claims and related declaratory judgment claim (Counts I–III) must be dismissed.

However, as stated above, to the extent Wright *can* plead, consistent with Federal Rule of Civil Procedure 11, that he terminated the assignment of the copyright pursuant to Section 203 of the Copyright Act, such a claim would be distinct, as the assignment would be—needless to say—terminated.

## III. Dismissal with or Without Prejudice and Remaining Defendants

In sum, the Court dismisses Wright's copyright infringement claims and related declaratory judgment claim (Counts I through III) as untimely. It dismisses the remaining state law claims (Counts IV through IX) for failure to state a claim.

SoundExchange requests that the dismissal of all claims against it be dismissed with prejudice, as "it is clear that any amendment would be futile." Mot. Dismiss at 14–15 (citing, among other cases, *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013)). As SoundExchange points out, this is Wright's second pleading

attempt. After SoundExchange moved to dismiss Wright's original complaint, R. 19, he moved for leave to amend, R. 31, which the Court granted. R. 35. Wright does not request leave to replead if the Court grants the dismissal motion. *See* Resp. This omission, however, can be overlooked given his *pro se* status.

"The general rule is to freely permit plaintiffs to amend their complaint once as a matter of course." *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1133 (7th Cir. 2022) (cleaned up). "After that, leave to amend depends on persuading the judge that an amendment would solve outstanding problems without causing undue prejudice to the adversaries." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 819 (7th Cir. 2013); *see Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing."); *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in . . . dismissing a complaint with prejudice . . . when the plaintiff fails to demonstrate how [an] amendment would cure the deficiencies in the prior complaint."). The Court agrees with SoundExchange that, even after having the benefit of viewing the arguments raised SoundExchange's first motion to dismiss, the FAC still fails to state a claim, and the Court is not persuaded that Wright can do so as to SoundExchange, based on the age of his claims (and his admissions as to when he learned about certain alleged

conduct) and the generality with which his claims are pled as to SoundExchange. Accordingly, Wright's claims against SoundExchange are dismissed with prejudice. *See Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 826 (N.D. Ill. 2016), *aff'd,* 845 F.3d 802 (7th Cir. 2017) (dismissing *pro se* complaint with prejudice where plaintiff did not seek leave to replead, failed to remedy identified deficiencies, and did "not allege any factual content that would support a cognizable claim under the law").

Turning to the remaining Defendants, as noted above, and as Wright points out in Count IX, the Court appointed the U.S. Marshals Service (USMS) to serve all Defendants shortly after Wright filed his original complaint. R. 6. For reasons not at all attributable to Wright, service still has not been effectuated on almost all Defendants. Therefore, no Defendant other than SoundExchange has appeared or responded to the FAC. As noted throughout this Order, the FAC only specifies actions taken by DJ International and Pop Star, but pleads only generally as to all other Defendants, including SoundExchange. SoundExchange's arguments in support of dismissal apply to all Defendants (apart from DJ International and Pop Star). Therefore, the Court finds that its reasons for dismissing the claims against SoundExchange apply with equal force as to the claims against all Defendants other than DJ International and Pop Star and dismisses all claims against London Records/FFRR, Bolloré SE, Vivendi SE, The Seagram Company Ltd., Warner Bros., Virgin EMI, SoundExchange, BMI, Universal Music Group, Harmless Records, Demon Music, Peermusic, and Polydor Ltd. *See Bradley v. Sabree*, 842 F.3d 1291, 1293 n.1 (7th Cir. 2016) (affirming dismissal of claims against unserved defendants

32

because "[t]he district court has authority to dismiss defective claims, and the procedural protections that we have outlined—notice and opportunity to respond— were satisfied by the [appearing] defendants' motion to dismiss, and [plaintiff] herself was able to file a response"); *Shah v. NYP Holdings, Inc.*, 2023 WL 266511, at *1 n.2 (N.D. Ill. Jan. 18, 2023) (dismissing unserved defendants, because "[w]hen a plaintiff appears *pro se*, a Court 'shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted' . . . and the rationale for dismissal [raised in the motion to dismiss filed by served defendants]. . . applies to all defendants") (quoting 28 U.S.C § 1915(e)(2)); *Rivas v. Levy*, 2015 WL 718271, at *5, *7, *9 nn.7, 10, 12–14, 16 (N.D. Ill. Feb. 18, 2015) (dismissing claims against unserved defendants based on the statute of limitations where the timeliness arguments raised by served defendants also applied to the claims brought against unserved defendants); *Dugan v. Washington*, 2001 WL 741626, at *1 n1. (N.D. Ill. June 11, 2001) ("It is reasonable to extend the practice of dismissing defendants who have not joined in a motion when they are similarly situated to the moving defendants or where the claims against all the defendants are integrally related to unserved defendants to unserved defendants, as it would serve no purpose for a plaintiff to go through the motions of completing service in order to transform a dismissal without prejudice for failure to serve into a dismissal with prejudice for failure to state a claim.") (cleaned up). While this result may seem unjust, it is dictated by practical considerations. The dismissal against the unserved Defendants, however, is without prejudice.

Turning to DJ International and Pop Star, the Court finds that SoundExchange's timeliness arguments as to the copyright infringement claims (and related declaratory judgment claim) apply in equal force to the claims against DJ International and Pop Star. Accordingly, Counts I through III are dismissed as to those Defendants, as well. *See Bradley*, 842 F.3d at 1293 n.1; *Rivas*, 2015 WL 718271, at *5, *7, *9 nn.7, 10, 12–14, 16. SoundExchange's arguments as to the state law claims, which focus on the generality of the allegations, do not apply with equal force as to DJ International and SoundExchange, and therefore dismissal of those claims as to those Defendants would be improper.

With the dismissal of Wright's copyright and declaratory judgment claims, however, the sole basis for federal jurisdiction has become nonexistent, and the Seventh Circuit has repeated that district courts should not exercise supplemental jurisdiction over remaining state law claims. *See Duehning v. Aurora E. Unified Sch.*, 102 F. Supp. 3d 968, 981–82 (N.D. Ill. 2015) (citing, among other cases *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010); *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.")).

True, by dismissing all Defendants but DJ International and Pop Star, no Defendant remains in the case that destroys diversity jurisdiction, but that does not mean the Court has diversity jurisdiction, as "jurisdiction depends on circumstances

at a suit's outset." *See City of E. St. Louis, Illinois v. Netflix, Inc.*, 83 F.4th 1066, 1070 (7th Cir. 2023).

But, as discussed above, although the FAC does not adequately plead termination of the copyright assignment, the Court reads Wright's response to argue that he may have terminated such assignment, which—without prejudging the issue—may allow Wright to bring a timely copyright claim based on a copyright he owns, if he can plead that DJ International, Pop Star, or other Defendants (apart from SoundExchange) continued distributing, selling, or licensing Wright's music after the termination went into effect. The Court reiterates, however, that the notice of termination attached to Wright's FAC is not compliant with Section 203 of the Copyright Act, so any amended copyright infringement claim would have to be based on a different notice of termination.

The Court therefore grants Wright leave to amend the complaint. If he can plausibly plead a copyright infringement claim as discussed in this Order, the Court will retain jurisdiction over this case. If he cannot, or elects not to file a second amended complaint, the Court will relinquish jurisdiction over the state law claims and Wright will have one year following dismissal to file his claims in state court. *See Duehning*, 102 F. Supp. 3d at 982 (citing *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008)). Any amended complaint must be filed on or before March 1, 2024.

The Court has independently looked into the service issues and has corresponded with the USMS, which has recently advised the Court that it cannot serve international entities. *See Smith v. Ludwig*, 2022 WL 2866704, at *2 (W.D. Wis.

July 21, 2022). The Court will wait to receive a second amended complaint to determine whether it has jurisdiction over this case before ordering USMS to serve any United States Defendants and/or to order the Clerk's Office to serve any international Defendants. Accordingly, the Court denies without prejudice Wright's motion to enforce service. R. 48.

## Conclusion

For the foregoing reasons, the Court grants SoundExchange's motion to dismiss under Rule 12(b)(6) [37]. All claims against SoundExchange are dismissed with prejudice. For the reasons raised in SoundExchange's motion to dismiss, all claims against London Records/FFRR, Bolloré SE, Vivendi SE, The Seagram Company Ltd., Warner Bros., Virgin EMI, BMI, Universal Music Group, Harmless Records, Demon Music, Peermusic, and Polydor Ltd. are dismissed without prejudice. The Court dismisses Counts I–III against Defendants DJ International and Pop Star for the same reasons, but declines to dismiss Counts IV–IX against DJ International and Pop Star. Wright may file a second amended complaint in accordance with this Order by March 1, 2024. As stated in this Order, if Wright cannot plausibly allege a timely copyright claim, the Court will relinquish jurisdiction over the state law claims, and Wright will be free to file those claims in state court within one year

following dismissal. For the reasons stated in this Order, the Court denies without prejudice Wright's motion to enforce service [48].


Dated: February 9, 2024

_____
United States District Judge
Franklin U. Valderrama